**MYLES S. BREINER**, Petitioner, v. **HONORABLE FRANK T. TAKAO**, Judge of the Circuit Court of the First Circuit, State of Hawaii, and **STATE OF HAWAII**, Respondents

NO. 16152

(FC–CR. NO. 62)

SEPTEMBER 3, 1992

LUM, C.J., WAKATSUKI, MOON, AND LEVINSON, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, IN PLACE OF KLEIN, J., RECUSED

500

***Per Curiam.*** In this original proceeding, Petitioner Myles Breiner (Petitioner) seeks the issuance of a writ of prohibition and/or mandamus vacating the trial court's pre–trial order entered in *State v. Greyson*, FC–Cr. No. 62. The pre–trial order grants the State's oral motion to prohibit counsel from communicating with members of the news media on matters related to this case. Petitioner contends the order is overly broad and constitutes a prior restraint of his right to free speech unjustified by the record. Upon reviewing the record, we conclude that the restrictive order was impermissible, and accordingly, the petition is granted.[1]

## I.

The underlying criminal proceeding in this case involves a charge of murder, Hawaii Revised Statutes (HRS) § 707–701 (1985),[2] against Malcolm Greyson (Greyson) who is accused of causing the death of his infant son in 1983. Although Greyson is acting as his own defense counsel, Petitioner was appointed by the court to act as advisory counsel to Greyson.

On May 7, 1992, immediately prior to trial, the deputy prosecuting attorney in this case orally moved the court to enforce

---

[1] This opinion is written to explain our order entered on June 10, 1992 vacating the trial court order.

[2] In 1986, the offense of murder was separated into Murder in the First Degree, HRS § 707–701, and Murder in the Second Degree, HRS § 707–701.5.

attorney disciplinary rules regarding publicity after seeing Petitioner talking to a news reporter from a local television station. Petitioner explained his conversation with the news reporter was completely unrelated to the case. Petitioner further explained that he knew the disciplinary rules and reviewed them with Greyson. The following exchange took place:

> Petitioner: Your Honor, this is an unusual case. We have a pro se defendant representing himself in a murder trial, a fourth retrial. It's unusual and the media is interested. The media has been contacted — has contacted myself and asked me questions. So far I have not responded. I just simply told them the trial is going ahead, come and see the trial.
>
> Now if questions are posed of me by the media, I feel I have a right and an obligation to say something and say something in a professional manner that's not going to purely [sic] reflect upon Mr. Takata's case, my case, or the dignity and honor of the court. But to gag the defense, there's no reason for it whatever.
>
> Prosecutor: Your Honor, media can be present in the courtroom. They can file an application for extended coverage and they can cover the trial that way. There should be no communication from the attorneys or Mr. Greyson to the media, and I ask for a gag order on all parties.

Transcript of May 7, 1992 at 4–5.

After considering the arguments by both parties, the court orally made the following ruling:

> In order to ensure a fair trial in this case, the jury should not read any media accounts of this trial. And no information should be — no interview should be granted by any counsel regarding this trial. I will, therefore, issue a gag order and no communication should be made to any

> reporters or media personnel regarding any aspect of this trial.

Transcript of May 7, 1992 at 8.

Two weeks later, the trial court issued a written order titled "Order Granting Oral Motion to Enforce Code of Professional Responsibility Regarding Trial Publicity." The order specifically provides as follows:

> Myles Breiner, Defendant Pro Se Malcolm Greyson, and Deputy Prosecutor Kevin Takata are prohibited from making any extrajudicial statement to any member of the media relating to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, during jury selection and the trial in this case.

On May 22, 1992, Petitioner filed the instant petition seeking an order from this court prohibiting the court from enforcing its order of May 7, 1992.

## II.

This court has consistently held that a writ of mandamus and/or prohibition is an extraordinary remedy which will not issue unless the petitioner demonstrates (1) a clear and indisputable right to relief and (2) a lack of other means to adequately redress the wrong or obtain the requested action. *State v. Oshiro*, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987) (citing *State ex rel. Marsland v. Shintaku*, 64 Haw. 307, 640 P.2d 289 (1982) (per curiam)). Such writs, however, are not meant to supersede the legal discretionary authority of the trial courts, nor are they to serve as legal remedies in lieu of normal appellate procedure. *State ex rel. Marsland v. Town*, 66 Haw. 516, 668 P.2d 25 (1983). In this case, mandamus is the appropriate remedy where the order of the court imposed a restraint on free speech rights unrelated to the merits of the criminal trial and thus could not be raised on appeal.

## III.

Petitioner argues that the trial court's order is overly broad and constitutes a prior restraint of expression unjustified by the record.[3] Despite the language used at the hearing on the State's motion, the State insists the court order is not a "gag order" and does not foreclose any communication which is otherwise appropriate within the terms of the Code of Professional Responsibility (Code).[4] The State explains it did not intend to seek an order broader than the restrictions contained in the Code except to extend the rules to Greyson.[5] Thus, the State contends there is no reason for this court to vacate the order.

## IV.

We note, at the outset, that the court's order in no way restricted the news media from covering the trial involved in this case. Thus, we must consider only the restraint on the trial participants.

It is well settled that a trial court possesses both the power and the responsibility to take affirmative measures to insure a defendant's sixth amendment right to a fair trial is not compromised and at the least to prevent or reduce prejudicial pretrial publicity. *See*

---

[3] Although Petitioner contends the order inhibits the public's right to know and Greyson's right to a public trial, there is nothing in the order which restricts the media's coverage of the trial.

[4] DR 7–107(D) provides as follows:

During the selection of a jury or the trial of a criminal matter, a lawyer . . . shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial, except that he may quote from or refer without comment to public records of the court in the case.

[5] As Greyson is not an attorney, he is not subject to discipline under the Code of Professional Responsibility. Thus DR 7–107(D) does not apply to him.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Sheppard v. Maxwell*, 384 U.S. 333 (1966). As previously noted, the court order in this case does not involve a prior restraint on the news media. Instead, it imposes restrictions upon extrajudicial statements made by the trial participants in this case. This distinction is important given the fact that attorneys, as officers of the court, have a legal and ethical responsibility to safeguard the defendant's right to a fair trial. *See Levine v. United States Dist. Court*, 764 F.2d 590 (9th Cir. 1985), *cert. denied*, 476 U.S. 1158 (1986); *National Broadcasting Co. v. Cooperman*, 116 A.D.2d 287, 501 N.Y.S.2d 405 (1986). As Justice Brennan explained in his concurring opinion in *Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976):

> As officers of the court, court personnel and attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice. It is very doubtful that the court would not have the power to control release of information by these individuals in appropriate cases and to impose suitable limitations whose transgression could result in disciplinary proceedings.

*Id.* at 601 n.27 (Brennan, J. concurring) (citation omitted); *see also Sheppard v. Maxwell*, 384 U.S. at 363 ("[c]ollaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures").

A trial court seeking to reduce prejudicial pretrial publicity by prohibiting trial participants from communicating with the media must give due consideration to both the defendant's right to a fair and impartial trial and the individual's right to free speech. While attorneys have a professional responsibility to protect the fairness and integrity of the judicial process and courts may, in specific cir-

cumstances, regulate attorneys' conduct, this does not mean that lawyers surrender their constitutional rights at the courthouse door. *Levine v. United States Dist. Court*, 764 F.2d at 595.

We are in agreement with the view that extrajudicial statements of attorneys may be subject to prior restraint by a trial court upon a demonstration that the activity restrained poses a serious and imminent threat to a defendant's right to a fair trial and to the fair administration of justice. *Levine*, 764 F.2d at 595; *see also Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970) (before a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain specific findings by the trial court which demonstrate that the conduct is a serious and imminent threat to the administration of justice); *National Broadcasting Co. v. Cooperman*, 116 A.D.2d at ___, 501 N.Y.S.2d at 408 (extrajudicial statements of attorneys may be subject to prior restraint upon a showing that such statements present a "reasonable likelihood" of a serious threat to a defendant's right to a fair trial). Furthermore, any order imposing prior restraint upon attorneys and other trial participants must be narrowly drawn and there must be a determination that less restrictive alternatives are not available to prevent the threatened harm. *Levine*, 764 F.2d at 595.

In *Levine*, the trial court issued a restraining order prohibiting attorneys involved in a notorious espionage case from speaking to the news media "concerning any aspect of the case that bears upon the merits to be resolved by the jury." The order was issued to counter extensive media interviews given by several defense lawyers regarding the government's evidence and which set forth the defense theory in great detail.

Upon review of the order, the Ninth Circuit Court of Appeals found there was sufficient evidence to show a serious and imminent threat to the defendant's right to a fair trial and that the district court's findings in this regard were appropriate. *Levine*, 764 F.2d

at 597–98.[6] The court also found that various alternatives to the restraining order such as voir dire, jury instructions, jury sequestration or change of venue or postponement would either be ineffective or counterproductive. *Levine*, 764 F.2d at 599–601. The court concluded, however, that the order was overly broad and remanded the case, directing the trial court to more narrowly define the scope of the restraining order.

---

[6] The trial court based its decision to issue the restraining order on the existence of a serious and imminent threat to the administration of justice and made the following oral findings:

> [I]n view of the comments contained in the Los Angeles Times article, it is plain that the serious and imminent threat to a fair trial outweighs any First Amendment rights at stake. To claim that the need to argue a client's case in detail in the press on the eve of trial is mandated by an ethical or legal responsibility belittles the government's, the defendant's, and most importantly in this instance, the public's right to a fair trial before an unbiased jury.

> With the nearness of trial, the potential for prejudice becomes particularly acute. There's nothing in the Code of Professional Responsibility requiring or even recommending that an attorney argue his or her case in the press or on the courthouse steps.

> Neither the press nor the public has the right to hear counsel argue their case prior to this court and the impaneled jury hearing the evidence, when doing so seriously impedes the fair and effective administration of justice . . . .

> Instead, it is the integrity of our judicial process that is fundamentally at stake. This trial will not become a circus show performed outside the courtroom, yet defense counsel's actions clearly foreshadow such an eventuality if this court does not take this action.
> . . . .

> However, the extent of such publicity in its prejudicial potential is of necessity speculative . . . . Nontheless [sic], based upon the details contained within the Los Angeles Times article, which this court is in no position to assess the veracity of and the motivations behind the article, this court finds it quite reasonable to expect that such publicity has been and will become even more pervasive, creating in effect a lobbying effort by counsel on behalf of their clients. The public has a right to expect a fairer trial than that.

*Levine*, 764 F.2d at 597–98.

Turning to the facts in this case, we conclude that the trial court failed to find that there was a serious threat to Greyson's right to a fair trial. Moreover, the court failed to consider other alternatives to its order. Thus, the order prohibiting the trial participants from communicating with the media regarding any aspect of the trial is constitutionally impermissible.

First, the record is devoid of any evidence showing that Petitioner made any statements to the media regarding the trial. Nor is there evidence showing Petitioner posed a serious and imminent threat to Greyson's right to a fair trial or attempted to release information that would obstruct the fair administration of justice. Instead, Petitioner assured the trial court that he understood the rules regarding extrajudicial statements and had no intention of violating the rules. Petitioner also assured the trial court that he explained the rules to Greyson and Greyson agreed to abide by them. Although the trial court explained it wanted to insure Greyson had a fair trial, the court made no specific findings that Greyson's right to a fair trial was endangered or that Petitioner threatened the fair administration of justice.

Second, even assuming the court made such a finding, the order was not narrowly drawn and there is no indication on the record that the gag order was the least restrictive alternative. Contrary to the State's contention, the order is more restrictive than the actual disciplinary rule the order allegedly enforces. DR 7–107(D) allows an attorney to "quote from or refer without comment to public records of the court in the case." [7] Despite the State's claim

---

[7] Although it is unnecessary for this court to consider the constitutionality of DR 7–107, we recognize that other courts have considered the constitutionality of disciplinary rules limiting extrajudicial statements by attorneys, but have reached conflicting conclusions. *See Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975), *cert. denied*, 427 U.S. 912 (1976) (the court found the rule constitutionally infirm primarily because of its failure to restrict the ban on lawyers' comments to instances where they posed a serious and imminent threat to a fair trial); *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979) (en banc) (the court ack-

that the order does not foreclose any communication by the affected parties which is otherwise allowed by the rule, if Petitioner were to make comments as allowed by the rule, such statements could arguably violate the order issued by Judge Takao. Furthermore, because the order does not specify the classes of comments that would be reasonably likely to prejudice the trial, the order effectively prevents any and all statements about the case to the media.

Finally, examination of the record in this case confirms that the trial court never considered any less drastic alternatives. Accordingly, the petition is granted and the trial court is prohibited from enforcing its order.

*Carl M. Varady* for Petitioner Myles S. Breiner.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for Respondent State of Hawaii.

*Anthony K. Bartholomew* for Respondent Frank T. Takao.

---

nowledged the **Bauer** holding, but held the more appropriate standard was whether the comments presented a reasonable likelihood that they would be prejudicial to the fair administration of justice); *In re Keller*, 213 Mont. 196, 693 P.2d 1211 (1984) (the court held the disciplinary rules (specifically 7–107(b)) restricting extrajudicial statements abridged free speech rights without creating a clear standard by which attorneys could gauge their conduct); *see also Gentile v. State Bar of Nevada*, 111 S. Ct. 2720 (1991) (the Supreme Court found the Nevada rule regarding extrajudicial statement void for vagueness as applied to Gentile, but the Court found the substantial likelihood of material prejudice test embodied in the rule did not violate the First Amendment).