*In re* J.S., a Minor (The People of the State of Illinois, Plaintiff-Appellee, v. J.M., Defendant-Appellant).

Second District    No. 2—94—0216

---

Opinion filed October 12, 1994.—Rehearing denied November 10, 1994.

146

Law Office of Lori L. Bruce, of McHenry (Lori L. Bruce, of counsel), for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The mother of J.S. brings an interlocutory appeal under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), seeking vacatur of an or-

der which prohibits the parties and their attorneys from discussing the facts in the underlying action with members of the news media. We affirm.

The Department of Children and Family Services (DCFS) took protective custody of J.S. on April 28, 1993, following the mother's report to DCFS that the child had been sexually abused. She and the child's father are divorced and have been engaged in a sometimes rancorous dispute over custody of J.S. The father brought a petition in the dissolution proceedings seeking sole custody of the child.

The State filed a petition for adjudication on April 30, 1993, asking that J.S. be declared a neglected minor and made a ward of the court. A hearing was conducted on that date, after which the trial court found probable cause to believe the child was neglected or abused and ordered that the child be evaluated by physicians. The court's April 30 order also contained the gag order which is the subject of this appeal.

Following a hearing on the father's custody petition and the State's petition for adjudication, the trial court ruled on August 17, 1993, that J.S. was a neglected minor and awarded the father sole custody of J.S. The court's written order specifically found that the mother had caused the child's emotional environment to be injurious "through her obsession with proving that the minor's father *** has sexually abused the minor. *** Mother physically abused the minor *** for the purpose of attempting to prove that *** [the father] sexually abused the minor." The court also found that "the evidence establishes overwhelmingly that the father *** did not sexually abuse" J.S.

The mother filed a motion to vacate the gag order on October 18, 1993. A hearing was conducted on the motion on February 7, 1994, after which the court denied the motion. This interlocutory appeal followed.

On appeal, the mother claims that the gag order (1) violates her constitutional right to free speech; (2) is an unnecessary injunctive restraint on speech in that less restrictive alternatives exist; and (3) is unconstitutionally overly broad and vague. For the following reasons, we find none of these allegations availing.

■ The gag order in this matter is the type of injunctive order which is properly the subject of an interlocutory appeal under Supreme Court Rule 307(a)(1). (See *Cummings v. Beaton & Associates, Inc.* (1989), 192 Ill. App. 3d 792, 796.) The scope of review of an interlocutory appeal is normally limited to determining whether the circuit court abused its discretion in granting or refusing the requested interlocutory relief. (*Zurich Insurance Co. v. Raymark*

*Industries, Inc.* (1991), 213 Ill. App. 3d 591, 594.) An exception to this limited scope arises when a question of Federal preemption is raised. (*People v. Kerr-McGee Chemical Corp.* (1986), 142 Ill. App. 3d 1104, 1106.) No such question is raised here.

In determining whether the circuit court abused its discretion, we will not compare what we might have done with what the court did. Rather, we must determine whether the circuit court " 'acted arbitrarily without the employment of conscientious judgment *** and ignored recognized principles of law so that substantial prejudice resulted.' " (*Zurich*, 213 Ill. App. 3d at 594-95, quoting *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326.) Our review of the record presented to us on appeal convinces us that the trial court followed recognized principles of law relative to "prior restraints" upon speech.

■ It is not contested that the circuit court's gag order constitutes a prior restraint on speech, and, as such, we must closely scrutinize the trial court's decision to impose that order. A prior restraint is a "predetermined judicial prohibition restraining specified expression." (*In re A Minor* (1989), 127 Ill. 2d 247, 264 (hereinafter *Minor I*).) Our supreme court in *Minor I* summarized the law governing prior restraints upon speech:

"[A] prior restraint upon publication is 'the most serious and the least tolerable infringement on First Amendment rights' [citation]. Prior restraints are particularly suspect when they prevent timely disclosure of truthful information. ***

*** [A]ny prior restraint upon speech, while not unconstitutional *per se*, bears a heavy presumption against its validity. [Citation.] *** In the context of pending judicial proceedings, a judicial order restraining speech will not be held invalid as a prior restraint if it is: (1) necessary to obviate a 'serious and imminent' threat of impending harm, which (2) cannot adequately be addressed by other, less speech-restrictive means." *Minor*, 127 Ill. 2d at 264-65.

The court in *Minor I* held that a newspaper which learned the identity of a juvenile criminal suspect through its own reporting efforts could not, consistent with the Federal and Illinois Constitutions, be prohibited from reporting that information once it entered the public domain, "at least in the absence of a serious and imminent threat to the minor's welfare which cannot be obviated by some other, less speech-restrictive means." *Minor*, 127 Ill. 2d at 250-51.

The appellant in *Minor I* was a news organization which was not a party to the underlying action but, rather, a neutral third party seeking to print information that it determined was newsworthy.

Here we have a party to a case who wants to tell her version of the case to the press. However, the *crucial* difference between *Minor I* and the present case is that the present case involves an innocent child victim, *not* a juvenile criminal suspect.

In *In re A Minor* (1992), 149 Ill. 2d 247 (hereinafter *Minor II*), our supreme court upheld a gag order against a newspaper which wanted to print the identity of a child victim when it learned that identity through court proceedings and not through its own reporting efforts. In distinguishing its earlier ruling in *Minor I*, the court in *Minor II* declared: "The most significant difference between [the two cases] is that in [*Minor I*], the juvenile was before the court in connection with a fatal shooting. Here [*Minor II*], the juveniles are before the court as victims of physical and sexual abuse by a parent." *Minor,* 149 Ill. 2d at 254.

■ While acknowledging the strong presumption against the validity of prior restraints upon free speech, the court in *Minor II* determined that the State, in its role as *parens patriae* to the innocent child victims, "has an interest in the nondisclosure of the minor victims' identities." (*Minor,* 149 Ill. 2d at 255.) The court found "the danger of public disclosure and the probability of irreparable adverse effects which such disclosure would entail to be a compelling State interest." (*Minor,* 149 Ill. 2d at 255.) Additionally, the court ruled that, coupled with the State's interest in nondisclosure, the minor victim has a "compelling interest" against the invasion of his or her privacy. *Minor,* 149 Ill. 2d at 255.

The court determined that the innocent child victim has a "constitutional right to be free from governmental invasions of privacy *** supplemented by the constitutional right to a certain remedy for invasions or injuries to one's privacy provided for in article I, section 12, of the Illinois Constitution of 1970." (*Minor,* 149 Ill. 2d at 256.) The court further observed:

"The minor victims in this case have done nothing to limit or diminish their constitutional right to be free from governmental *and* nongovernmental invasions of their privacy. They are not juvenile delinquents. They are not participating in the juvenile proceedings begun on their behalf through their own free will. They were victims of abuse by a parent. They were thrust into the juvenile system by actions of third parties, not by their own actions. Under these facts, we find that the minor victims have a compelling interest in their right to be free from invasions of their privacy. Public disclosure of their identities would surely invade their right to privacy in a most egregious manner." (Emphasis in original.) *Minor,* 149 Ill. 2d at 256-57.

The court in *Minor II* emphasized, however, that the minor's and the State's compelling interests in nondisclosure must be weighed against " 'the need for free and unfettered expression.' " *Minor*, 149 Ill. 2d at 257, quoting *Landmark Communications, Inc. v. Virginia* (1978), 435 U.S. 829, 843, 56 L. Ed. 2d 1, 13, 98 S. Ct. 1535, 1543.

Here, the record indicates that J.S. has suffered emotional trauma because of the strife between the parents. Airing that strife in the media could only exacerbate the problem and surely would constitute an egregious invasion of the child's privacy, forbidden by *Minor II*. On the other side of the balance is the "need for unfettered speech." We fail to see the *necessity* of discussing the details of this case with the news media. Weighing the factors outlined in *Minor II*, we find that J.S.'s rights to privacy and to be free from further emotional trauma outweigh the mother's right to take her case to the press.

The mother claims that no harm would come to her child because she would agree to use only her unmarried surname when speaking with the media and would not disclose her child's identity. Further, the mother claims that because J.S. does not live in a small town, in which residents often know most of the other residents of the community, J.S.'s identity is not likely to be gleaned from details of the case. However, we are not convinced that these efforts would sufficiently safeguard the child's identity to pass muster under *Minor II*.

The mother further contends that the trial court made no findings to indicate that public discussion of the issues in this case would harm J.S. The contention that such findings are required before a gag order may be imposed derives from the mother's reading, which we believe is incorrect under these facts, of a key prior restraint case in Illinois: *Kemner v. Monsanto Co.* (1986), 112 Ill. 2d 223.

*Kemner*, which was cited approvingly by the supreme court in both *Minor I* and *Minor II*, declared:

> "[A] trial court can restrain parties and their attorneys from making extrajudicial comments about a pending civil trial *only* if the record contains sufficient specific findings by the trial court establishing that the parties' and their attorneys' conduct poses a *clear and present danger or a serious and imminent threat to the fairness and integrity of the trial.*" (Emphasis in original.) *Kemner*, 112 Ill. 2d at 244.

Key features distinguish *Kemner* from our case. *Kemner* was a civil trial, not a juvenile proceeding. No innocent juvenile victim was involved in *Kemner*. The competing interests in *Kemner* were free expression versus the fairness and integrity of a trial. The most

important distinguishing feature, however, is that *Minor II* imposes upon us additional considerations that were not part of *Kemner*, factors which are unique to proceedings involving an innocent child victim. The gag order in this case remains necessary to maintain J.S.'s privacy and emotional well-being.

The mother also cites *In re Summerville* (1989), 190 Ill. App. 3d 1072, as supporting her position. In that case, the court held that a gag order similar to the one at bar, also issued in a juvenile matter, was an impermissible prior restraint on speech. (*Summerville*, 190 Ill. App. 3d at 1078.) However, that case was decided prior to *Minor II* and, therefore, did not take into account the factors articulated in that later case. Additionally, news stories about the child in *Summerville* appeared in the media *prior* to the imposition of the gag order. Therefore, the child's privacy could not be protected by that order.

It is important to note that this case does not impact the rights of the press to attend juvenile proceedings. Section 1—5(6) of the Juvenile Court Act of 1987 provides in relevant part:

> "The general public *except for the news media* and the victim shall be excluded from any hearing ***. However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 37, par. 801—5(6) (now 705 ILCS 405/1—5(6) (West Supp. 1993)).

The press was not directly affected by the gag order in the present matter, which provides that the parties and their attorneys may not discuss the case with the news media. The order did not bar the media from any of the proceedings in the case, nor did it prohibit the media from making its own inquiries. Whether any representatives of the media deemed the matter newsworthy enough to cover the proceedings involving J.S. is not made clear in the record. The mother claims in her reply brief that, "as a result of the trial court's injunctive restraint, the media did not cover the juvenile proceedings." Counsel for the mother stated at oral argument that the mother was approached by members of the news media but that she asked them not to cover the proceedings involving J.S. because of the gag order. We note that the gag order did not require such action by the mother.

The State has moved to strike the above-quoted portion of the mother's reply brief as unsupported by evidence in the record. It is clear that, absent a stipulation by the parties, matters outside the record cannot be considered by a court of review. (*People v. Thomas* (1991), 220 Ill. App. 3d 110, 128.) Our examination of the record discloses nothing to support the mother's claim that the media did

not cover the juvenile proceedings because of the gag order. Therefore, we grant the State's motion to strike.

■ We agree with the mother that the gag order constitutes an indirect restraint on the press. However, we note that a gag order on parties and their attorneys has been cited as an acceptable less restrictive alternative to restrictions imposed directly on the media. See *Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 564, 49 L. Ed. 2d 683, 700-01, 96 S. Ct. 2791, 2805.

The mother further contends that *Minor II* permits only a restriction upon the media's disclosure of a minor's identity and not upon reporting of information about the case. Thus, the mother contends, the indirect restriction on the media posed by the gag order in this case violates the dictates of *Minor II*. This is an overly broad, and incorrect, reading of that case.

The supreme court in *Minor II* determined that "the legislature has not authorized the court to restrict 'information' *obtained at the juvenile victims' proceedings*. The only information that the newspaper may not disclose is the identities of the minor victims." (Emphasis added.) (*Minor,* 149 Ill. 2d at 254.) Thus, the court was noting only that the press may not be restricted in what information it reports, other than identity, which it obtains from whatever juvenile proceedings it may attend. The supreme court did not rule that a trial court may never restrict the flow of information to the media by forbidding parties or their attorneys to speak with the news media.

Also without merit are the mother's claims that the gag order is unconstitutionally vague and overly broad. In support of these claims, the mother cites to *Kemner,* which determined that the gag order in that case was unconstitutionally overly broad and vague.

The supreme court in *Kemner* noted that an order must be narrowly drawn so as not to prohibit speech that would not be prejudicial to a fair trial. (*Kemner,* 112 Ill. 2d at 247, citing *Carroll v. President & Commissioners* (1968), 393 U.S. 175, 183-84, 21 L. Ed. 2d 325, 332-33, 89 S. Ct. 347, 353.) However, we have already noted that weighing speech rights against the need to protect the fairness and integrity of a trial is just one of the factors to consider when a case involves an innocent child victim. If the gag order in this matter had been more narrowly drawn, it likely would have resulted in J.S. being deprived of the rights our supreme court detailed in *Minor II*.

Neither is the gag order in this case unconstitutionally vague. The gag order is quite brief and to the point: "The parties and their attorneys are not to *discuss* this case with the media." (Emphasis added.) The mother argues that "the parties and their attorneys can only guess as to what comments fall within the court's prohibition."

An unconstitutionally vague law is one that fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by law and encourages arbitrary and erratic arrests and convictions. (*Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843.) Here, we are confident that a person of ordinary intelligence would read the gag order to forbid exactly what the mother wanted to do: take her case to the media.

The United States Supreme Court in *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, declared:

> "Condemned to the use of words, we can never expect mathematical certainty from our language. The words [of the statute at issue] are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' [citation], but we think it is clear what the ordinance as a whole prohibits." *Grayned*, 408 U.S. at 110, 33 L. Ed. 2d at 228-29, 92 S. Ct. at 2300.

Thus, we will not engage in a pedantic dissection of the word "discuss," the pivotal word in the gag order in the present matter. "Discuss" has a clear and commonly understood meaning. We are confident that the parties and their attorneys knew precisely what the gag order prohibited.

Further, we note that most vagueness cases concern a governmental body which has enacted a law addressed to the public at large. The problem of vagueness is most acute in such cases because there is no direct notice or explanation between the governmental body and the public to clarify what an unclear statute might prohibit. Here, we have an order from a judge to a specific, small group of persons intimately involved in one case.

The gag order which was found to be void for vagueness in *Kemner* read, in part, that the parties and their attorneys were prohibited from "taking any action outside this courtroom that is *calculated to or is reasonably foreseeable to influence any juror in this cause.*" (Emphasis in original.) (*Kemner*, 112 Ill. 2d at 248.) The court determined that the parties could only guess at what action would fall under the proscription as worded. Such a problem is not presented here.

Also, the supreme court in *Kemner* based its decision to invalidate the gag order in part on its determination that a less-restrictive alternative existed: the trial court's inherent power to impose contempt citations if the parties attempted to influence the jury. (*Kemner*, 112 Ill. 2d at 249.) In this case, no contempt citation could restore J.S.'s privacy or undo any emotional harm once done.

Further, the court in *Kemner* noted that its gag order was unnec-

essary because the attorney for the party that opposed the order gave the court assurances that it would not engage in activities which the order prohibited. (*Kemner*, 112 Ill. 2d at 249.) Here, no such assurances were given. Indeed, the mother wants to do precisely what the order prohibits.

Finally, we note that we have addressed only the merits of the legal arguments presented here. We have not addressed in detail what appears to be the paradoxical illogic of the mother's argument, that the gag order should be lifted because it is at once violative of her first amendment speech rights *and* is insufficiently restrictive to prevent the news media from discovering J.S.'s identity. The mother points out that her dissolution case, which includes custody matters involving J.S., is not a closed juvenile proceeding. Thus, the restrictions upon the media which apply in juvenile court are not automatically available in the dissolution proceedings. The mother proposes as a remedy that she be allowed to talk with the media and personally see to it that her child's anonymity is protected.

We fail to comprehend how the mother could discuss with the news media the scandalous, horrendous details of sexual abuse that she alleges occurred while keeping confidential the identity of the alleged victim. Under the facts of this case, we believe that the trial court was correct to protect J.S.'s anonymity and that it used the order with sufficient restraint that constitutionally protected speech was not unduly burdened.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and PECCARELLI, J., concur.