Electronically Filed
Supreme Court
SCAP-17-0000639
28-JUN-2018
08:40 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

In the Interest of FG, AG, PG

_____

SCAP-17-0000639

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(CAAP-17-0000639; FC-S NOS. 16-001K and 16-056K)

JUNE 28, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  Introduction

This case arises from a Hawaiʻi Revised Statutes (HRS) Chapter 587A Child Protective Act (CPA) proceeding.  Parents and their children have been under the supervision of the Department of Human Services (DHS) since 2016.  In July 2017, Parents' three-year-old child, FG, died while in foster care.

Parents shared information related to the foster placement and FG's death on social media and with a local news organization.  The family court thereafter issued an order which prevented all parties to the CPA proceeding from:  disclosing the names of the two children still in foster custody to the general public, and, pursuant to HRS § 587A-40,[1] releasing reports or other information that "have been or will be" submitted to the family court relating to the case or the Parents' two surviving children.  On appeal, Parents challenge both portions of the family court's order.

First, we hold that the family court failed to make the findings required to establish that the prohibition against disclosure of the children's names survives a First Amendment challenge.

---

[1]    HRS § 587A-40 provides:

The court shall keep a record of all child protective proceedings under this chapter.  Written reports, photographs, x-rays, or other information that are submitted to the court may be made available to other appropriate persons, who are not parties, only upon an order of the court.  The court may issue this order upon determining that such access is in the best interests of the child or serves some other legitimate purpose.

As set forth in rules adopted pursuant to chapter 91 by the department of human services and consistent with applicable laws, the department may disclose information in the court record without order of the court, unless otherwise ordered by the court.

HRS § 587A-40 (Supp. 2016).

Second, we hold that the family court abused its discretion in entering the portion of the order prohibiting disclosure of records that have or will be submitted to the family court. The family court failed to adequately explain the basis for the order, and the record was insufficient to support its issuance.

## II. Background

In January 2016, the family court awarded DHS family supervision[2] of Parents and their children, based on DHS's petition asserting that Parents had substance abuse issues and that there were "hazardous and dangerous" physical living conditions on Parents' property. In July 2016, the family court awarded DHS foster custody, based on DHS's representations that Parents were not complying with the family court ordered service plan. Parents' three children were eventually placed in a general licensed foster home.

On July 26, 2017, three-year-old FG died while in foster care. DHS and the Hawaiʻi Police Department initiated an investigation, and DHS removed Parents' two surviving children from the home, and placed them in a different DHS licensed foster

---

[2] "'Family supervision' means the legal status in which a child's legal custodian is willing and able, with the assistance of a service plan, to provide the child with a safe family home." HRS § 587A-4 (Supp. 2016). When DHS or another authorized agency has family supervision, it has the duty to monitor and supervise the children and the children's family members who are parties to the CPA proceeding. HRS § 587A-15 (Supp. 2016).

3

home.

On July 31, 2017, DHS filed an "Ex-parte motion for TRO to prevent unauthorized disclosure of confidential information." DHS moved to prevent Parents from disclosing confidential information "relating to the subject children and this court case" to the general public without prior court authorization. DHS based its motion on HRS §§ 587A-40 and 350-1.4[3] and Hawaiʻi Administrative Rule (HAR) 17-1601-4,[4] which provide for the confidentiality of CPA and DHS records. DHS included with its motion the declaration of a DHS social worker who declared that

---

[3]     HRS § 350-1.4 (Supp. 2016) provides, in relevant part:

All reports to the department concerning child abuse or neglect made pursuant to this chapter, as well as all records of such reports, are confidential. The director may adopt rules, pursuant to chapter 91, to provide for the confidentiality of reports and records and for the authorized disclosure of reports and records. Any person who intentionally makes an unauthorized disclosure of a report or record of a report made to the department shall be guilty of a misdemeanor.

[4]     HAR § 17-1601-4 provides, in relevant part:

(a) All records and information shall be confidential and unauthorized disclosure or re-disclosure shall be a violation. Records shall not be accessible for public inspection except as provided by this chapter. Disclosure of records shall be provided in accordance with departmental procedures; provided, however, that when the record contains information that the person is not authorized to receive, that information shall not be provided.

(b) Recipients of confidential information shall be bound by the same confidentiality restrictions as the department and shall maintain confidentiality and prevent unauthorized re-disclosure.

Mother had posted confidential information on Facebook. She attached Mother's posting, which identified FG and one of Parents' surviving children, then age one and a half, by name. The posting provided that the children were in DHS custody, that FG had died while in foster care, and that one of the two surviving children had been injured while in foster care, and also included the names of the social workers and foster parents. Father was interviewed by KHON2 News and the interview was broadcast on the evening news and posted on the KHON2 website. Father did not disclose the names of Parents' surviving children, but mentioned that they were still in foster custody. The social worker declared that DHS was concerned that Parents would continue to release confidential information unless the family court issued an order "that clearly prohibited [Parents] from engaging in that type of activity."

On August 1, 2017, the family court granted the ex parte motion and entered a temporary restraining order (TRO). The family court's August 1 TRO provided that, pending a hearing on the matter, Parents were prohibited from disclosing confidential information relating to the CPA case and the subject children to the general public without prior court authorization. The confidential information which the TRO prohibited Parents from disclosing included, but was not limited to, information

5

relating to: the children's foster custody status, the children's resource caregivers, the involvement of DHS, the involvement of service providers, and any administrative or law enforcement investigation into FG's death.

Parents filed a memorandum in opposition to the TRO, arguing that it was an unlawful prior restraint of their First Amendment rights, and that there was no evidence that Parents had released family court or DHS records.

On August 8, 2017, the family court held a hearing. The family court agreed that the TRO "should somehow be changed" and explained to the parties its role of balancing the confidentiality of the case with the rights of Parents in the hopes of reaching a "happy medium."

Counsel for Parents argued that the TRO was an unconstitutional prior restraint.  He argued that the TRO had resulted in serious practical consequences for the investigation into FG's death, explaining that Parents had been unable to talk to police detectives about the death.  Counsel for Parents further argued that the TRO violated Hawai'i Family Court Rules (HFCR) Rule 65[5] because the State did not submit evidence that

_____

[5]    HFCR Rule 65 provides, in relevant part:

(b) Restraining Order; Notice; Hearing; Duration.  A restraining order may be granted without notice to the adverse party when it clearly appears from specific

(continued...)

Parents had released family court records.  He argued further
that Parents did not intend to release records.

Counsel for DHS requested that the TRO be drawn more
narrowly by preventing Parents from releasing only the records
and "the names."  DHS argued that such a revised order, narrowly
drawn, would be constitutional.  Counsel for DHS argued that the
new order it requested "merely tracks the language of section
[HRS §] 587A-40."

The court asked whether there was anything "in statute
or rule or case law that precludes one from disclosing the names
of children," and counsel for DHS responded, "not that I'm aware

---

[5](...continued)
facts shown by affidavit or declaration or by the
verified complaint or cross-complaint that immediate
relief to the applicant is appropriate.  Every
restraining order granted without notice shall be
filed forthwith in the clerk's office and entered of
record, shall be accompanied by an appropriate
application for further relief, shall be set for a
prompt hearing, and shall be served forthwith upon any
party or parties affected by the order.  It shall
continue in effect until further order of the court.
Upon notice to the party who obtained the restraining
order without notice, the adverse party may move to
advance the hearing.

. . . .

(d) Form and Scope of Restraining Order.  Every
restraining order shall set forth the reasons for its
issuance; shall be specific in terms; shall describe
in reasonable detail, and not by reference to the
complaint or other document, the act or acts sought to
be restrained; and is binding only upon the parties to
the action, their officers, agents, servants,
employees, and attorneys, and upon those persons in
active concert or participation with them who receive
actual notice of the order by personal service or
otherwise.

of[.]"

The court asked whether, if it were to issue a revised order which tracked the language of HRS § 587A-40, Parents would abide by the statute. Counsel for Parents confirmed that Parents would abide by HRS § 587A-40, and reiterated that Parents had not released records. Counsel for DHS clarified that it was not claiming that Parents had released any records, but that, based on the Facebook posting and the KHON2 interview, DHS had a concern that Parents might release records, and so, were "asking for this order to remind the parents not to release those records." Counsel for DHS further argued that the foster parents named in Mother's Facebook posting had received death threats.

After hearing the parties' arguments, the family court rescinded the TRO and entered a new order that prohibited from disclosure only the records of the proceedings pursuant to HRS § 587A-40, and the names of Parents' two other children. Disclosure of the names of the social workers, guardian ad litem, and the resource parents would no longer be enjoined. The family court explained:

> Everything that we do in these type of cases are in the best interest or should be in the best interest of children. That's paramount in everything. And so the Court's order today is in the best interest of the children. Of these children. These three children, one who has unfortunately passed away.
>
> The Court will grant the -- I'm sorry, will sustain the objection in part as follows. The Court order

will be modified to say as follows, and the Court really is tracking 587A-40. All of these proceedings are confidential. And so the Court will order that all records of these proceedings, these protective proceedings, shall be kept confidential. Written reports, photographs, X-rays, or other information that are submitted to the Court will only be made available to the Parties in this case. And not anyone else unless there is an appropriate motion or request or stipulation submitted to the Court. The Court makes this order that access to these records or prohibiting access to these records is in the best interest of the children involved in this case.

Unfortunately the Court does not have any further information on why the guardian ad litem's names or name, or the social workers' names on why that would be detrimental to the best interest of these children. Certainly the guardian ad litem, or the parents' attorneys, or DHS may submit a motion if there is any concern and we'll deal with it at that time. But at this point it doesn't have sufficient information.

Finally -- but with regards to the children that are the subject, the remaining two children, I have to find that it's in their best interest that their names not be disclosed only because there is a pending case. I'm concerned about the impact that it may have upon these two children if their names were disclosed. But certainly that wouldn't preclude the parents, if they wish to, to talk about "we have two other children." But just the names, for their protection, should not be disclosed. So that would be the order of the Court.

Counsel for Parents requested that the court issue an order with specific findings to support the imposition of the injunction, pursuant to HFCR 65(d). The family court agreed, and asked DHS to draft the order.

On August 25, 2017, the family court entered its Findings of Fact, Conclusions of Law, Decision and Order ("Order"):

Finding of Fact/Conclusions of Law:

1. This is a proceeding under Chapter 587A, Hawaii

9

Revised Statutes.

2.    It is in the best interest of children and their families that Chapter 587A proceedings are kept confidential[.]

3.    "The court shall keep a record of all child protective proceedings under this chapter. Written reports, photographs, x-rays, or other information that are submitted to the court may be made available to other appropriate persons, who are not parties, only upon an order of the court."  Hawaii Revised Statutes §587A-40.

4.    The imposition of a protective order, ensuring that all parties comply with §587A-40 is granted.  Pursuant to §587A-40, the Court will consider releasing information about this case to non-parties, if there is a showing that the release of said information is either in the best interests of the child or serves some other legitimate purpose.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

A.    ALL PARTIES in this case are hereby prohibited and restrained from releasing, disclosing, disseminating, and broadcasting written reports, photographs, x-rays, or other information that have been or will be submitted to the court relating to the subject children and this court case to the general public without prior court authorization, pursuant to HRS §587A-40.

B.    ALL PARTIES in this case are hereby prohibited and restrained from disclosing the names of the two children still in foster custody to the general public, including but not limited to the media, social media or internet postings.

On September 19, 2017, the parties stipulated to revoke foster custody over the surviving children, and the family court ordered family supervision over the children, concluding that Mother could provide a safe home with the assistance of a service plan.

10

Parents timely appealed to the ICA and applied for transfer, which this court granted.  On appeal, Parents argue that the portion of the family court's Order prohibiting Parents from disclosing their surviving children's names is an unconstitutional prior restraint that infringes their right to freedom of speech.  Parents also challenge the portion of the Order that prohibits them from releasing records, arguing that the statute on which the Order is based, HRS § 587A-40, is vague and ambiguous.[6]

## III.  Standards of Review

### A.  Constitutional Law

"We review questions of constitutional law de novo, under the right/wrong standard."  Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawai'i 159, 164-65, 172 P.3d 471, 476-77 (2007) (quoting Onaka v. Onaka, 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006)) (internal quotation marks omitted).  Thus, this court "exercises its own independent constitutional judgment, based on the facts of the case."  State ex rel. Anzai v. City & Cty. of Honolulu, 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002) (citing State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).

> Whether speech is protected by the first amendment [to the United States Constitution], as applied to the

---

[6]  Because we vacate the Order, we do not address Parents' challenge to HRS § 587A-40.

11

> states through the due process clause of the
> fourteenth amendment, is a question of law which is
> freely reviewable on appeal. Correlatively, [o]ur
> customary deference to the trial court upon
> essentially a factual question is qualified by our
> duty to review the evidence ourselves in cases
> involving a possible infringement upon the
> constitutional right of free expression.

State v. Viglielmo, 105 Hawai'i 197, 203, 95 P.3d 952, 958 (2004)

(citations and quotations omitted).

## B.  Injunctive Relief

"Generally, the granting or denying of injunctive

relief rests with the sound discretion of the trial court and the

trial court's decision will be sustained absent a showing of a

manifest abuse of discretion." Sierra Club v. Dep't of Transp.

of State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242

(2009) (quoting Hawai'i Pub. Employment Relations Bd. v. United

Pub. Workers, Local 646, AFSCME, AFL-CIO, 66 Haw. 461, 467-68,

667 P.2d 783, 788 (1983)).

> The relief granted by a court [in] equity is
> discretionary and will not be overturned on review
> unless the [circuit] court abused its discretion by
> issuing a decision that clearly exceeds the bounds of
> reason or disregarded rules or principles of law or
> practice to the substantial detriment of the
> appellant.

Pelosi v. Wailea Ranch Estates, 91 Hawai'i 478, 487, 985 P.2d

1045, 1054 (1999) (internal quotations omitted).

12

### IV.  Discussion

**A.  The Family Court did not Properly Apply the Required First Amendment Analysis in Issuing the Prohibition Against Disclosure of the Children's Names**

Parents argue that the portion of the Order prohibiting Parents from disclosing their surviving children's names, Part B, is an unconstitutional prior restraint of their First Amendment rights to free speech.  DHS does not dispute that part B of the Order constitutes a prior restraint, but argues that the restraint meets the three-prong test in Levine v. U.S. District Court for the Central District of California, 764 F.2d 590, 593 (9th Cir. 1985).  Parents agree with DHS that the Levine test is the appropriate test, but contend that Part B of the Order fails the test.

We agree with the parties that the Levine test applies to the prohibition against disclosure of the children's names, and we hold that the family court failed to make findings required to establish that the restraint met the test.  "Prior restraints are subject to strict scrutiny because of the peculiar dangers presented by such restraints."  Levine, 764 F.2d at 595.  Quite simply, the family court did not engage in the required constitutional analysis before impinging on Parents' right to free speech by entering part B of the Order.

The Levine test provides that a prior restraint on the

First Amendment right to free speech of a trial participant may be upheld if "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest," "(2) the order is narrowly drawn," and "(3) less restrictive alternatives are not available." Levine, 764 F.2d at 595 (citations omitted). DHS correctly argues that this court followed the Levine test in Breiner v. Takao, 73 Haw. 499, 504-05, 835 P.2d 637, 640-41 (1992). There we reiterated that the trial court must make specific findings that the Levine test has been satisfied before imposing a prior restraint on the free speech of trial participants. See Breiner, 73 Haw. at 505-07, 835 P.3d at 641-43.

The first prong of the Levine test requires a court to make specific findings that: the competing interest is compelling; the competing interest will be harmed or threatened absent the court's imposition of a restraint; and, in balancing the competing interest with First Amendment rights, that the competing interest deserves greater protection. See id. at 505, 835 P.3d at 641 ("the record must contain specific findings by the trial court which demonstrate that the conduct is a serious and imminent threat"); Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 843 (1978) ("the test requires a court to make its own inquiry into the imminence and magnitude of the danger said to

14

flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression").

DHS argues that protecting the confidentiality of children involved in child proceedings is an "overwhelmingly important governmental interest."  It argues that the Hawai'i legislature has enacted several statutes under the CPA to preserve confidentiality, and that this court has issued rulings to safeguard information contained in CPA proceedings.  In response, Parents argue that the family court did not make findings that disclosure of their children's names constituted a threat to a protected competing interest.

The United States Supreme Court has recognized the states' compelling interest in protecting confidentiality of child abuse information.  See Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987).[7]  This court cited Ritchie with approval in State v. Peseti, 101 Hawai'i 172, 65 P.3d 119 (2003), in holding that the family court's decision to seal a complainant's Child Protective Services (CPS) file did not violate the defendant's due process rights:

---

[7]    In Barnard v. State of Hawai'i, No. 05-00599 SPK-LEK, 2007 WL 954303,(D. Haw. Mar. 27, 2007), the United States District Court for the District of Hawai'i noted that the United States Supreme Court characterized a state's interest in protecting information about child abuse as compelling. Id. at *4 (citing Ritchie, 480 U.S. at 60).

15

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's <u>compelling interest in protecting its child-abuse information</u>. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the Commonwealth—like all other States—has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed[.]

<u>Id.</u> at 185-85, 65 P.3d at 132-33 (quoting <u>Ritchie</u>, 480 U.S. at 56-67) (emphasis added).[8]

In, <u>Ritchie</u> the Court also noted that "[t]he importance of the public interest at issue in this case is evidenced by the fact that all 50 States and the District of Columbia have statutes that protect the confidentiality of their official records concerning child abuse." 480 U.S. at 60 n.17. Indeed, the states' maintenance of the confidentiality of child abuse records is required as part of their compliance with the federal

---

[8] The <u>Peseti</u> court, in not allowing full disclosure, indicated that the defendant's due process rights to a fair trial were protected because the family court conducted an <u>in camera</u> review of the complainant's CPS file and thereafter produced redacted relevant portions of the file to the defendant. <u>Id.</u> at 187, 65 P.3d at 134.

Child Abuse Prevention and Treatment Act (CAPTA).  CAPTA provides federal grants to states for the purpose of assisting them in improving the child protective services of the state.  See 42 U.S.C.A. § 5106a(a).  In order to receive funding, states must submit plans which include how the state will "preserve the confidentiality of all records in order to protect the rights of the child[.]"  Id. at (b)(1)(A), (b)(2)(B)(viii).

This compelling state interest in protecting the confidentiality of child abuse information is reflected in numerous Hawaiʻi statutes and regulations.  The purpose of the CPA is to serve the best interests of children.  See HRS § 587A-2 (Supp. 2016) ("This chapter shall be liberally construed to serve the best interests of the children[.]").  The CPA provides for the confidentiality of records, and requires that its proceedings be closed to the general public and held without a jury.  HRS § 587A-40; HRS § 587A-25 (Supp. 2016).  Further, family court records in many types of cases involving children are not available for public inspection.  HRS § 571-84 (Supp. 2016). Hawaiʻi also provides for the confidentiality of DHS records regarding reports and investigations of child abuse or neglect, and the intentional unauthorized disclosure of a report or record of a report to DHS constitutes a misdemeanor.  HRS § 350-1.4 (Supp. 2016).

17

Thus, as recognized by the United States Supreme Court, and as reflected in the extensive state and national statutory protection of the confidentiality of child abuse records, there is a constitutionally recognized compelling state interest in keeping child abuse records confidential.

However, as DHS conceded at the family court hearing on the Order, there is no statutory protection in Hawaiʻi against parents disclosing their children's names to the public. Thus, we must apply the Levine test to assess the validity of the family court's prohibition on Parents' disclosure of their children's names. That test requires that courts make specific findings that there is a threat to a competing interest before entering a prior restraint. See Levine, 764 F.2d at 595; see also Care & Prot. of Edith, 421 Mass. 703, 706, 659 N.E.2d 1174, 1177 (1996) ("A general rule that bars any parent from directly or indirectly revealing the names of children subject to a care and protection proceeding will not do. There must be evidence and findings as to what effect the disclosure of the names of the particular children will or might have on them.")

Here, the family court's findings in its written Order were limited to stating, "It is in the best interest of children and their families that Chapter 587A proceedings are kept confidential[.]" The Order did not explicitly find that

18

confidentiality would serve the best interest of Parents' children.  The family court also failed to make findings that Parents' conduct posed a serious and imminent threat to the best interests of their children.  See Breiner, 73 Haw. at 505, 835 P.2d at 641 ("the record must contain specific findings by the trial court which demonstrate that the conduct is a serious and imminent threat[.]") (quotation omitted).  Finally, the family court did not identify or assess Parents' First Amendment interests.  See Levine, 764 F.2d at 595.[9]

In short, the family court failed to make sufficient written findings that the first prong of the Levine test was met, and accordingly, it did not discharge its duty to find that there was a "clear and present danger or a serious and imminent threat to a protected competing interest[.]"  See Levine, 764 F.2d at 595.

Further, the family court did not find that the Order met the second and third prongs of the Levine test--i.e., it did not find that the Order was narrowly drawn or that less

---

[9]      In assessing Parents' First Amendment rights, we note that this is a case in which a child has died while in foster care.  State statutes which provide for review of child deaths that occur in state custody demonstrate that Hawai'i has an interest in ensuring accountability in the foster care system.  See HRS § 321-341 (Supp. 2016)(providing that the Department of Health (DOH) may conduct multidisciplinary and multiagency reviews of child deaths); HRS § 321-345.5 (Supp. 2016) (requiring the DOH to submit an annual written report to the legislature on the status of child death reviews conducted by the department, and the report must include the number of children in state custody and the cause of those deaths).

19

restrictive alternatives were available. See id. Here, the family court's Order prohibits Parents from disclosing their children's names to the general public. The family court did not make clear what it meant by including the term "general public" in its Order. Further, the family court did not explicitly consider whether its Order was narrowly drawn to ensure that it was no more restrictive than necessary to protect the State's interests. See id.

In summary, the family court did not engage in the requisite constitutional analysis to support a prohibition against disclosure of Parents' children's names.

Accordingly, the family court's Order must be vacated. However, we provide that the Order will remain in effect for forty-five days after the filing of the judgment for this opinion to provide DHS with an opportunity to renew its request for a restraint on remand. The family court's Order will automatically vacate at the end of the forty-five-day period.[10]

If DHS moves on remand to enter a new restraining order, it shall present evidence, and the family court must make specific findings, that the requirements of the Levine test are met prior to issuing a new order. The Levine test states in the

---

[10] If DHS elects not to file a request for a restraint on remand, it shall immediately notify the family court, which shall forthwith rescind the Order.

first prong that the prior restraint may be upheld if the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest. So, the family court would determine on remand whether the release of the children's names poses a clear and present danger or serious and imminent threat to the children's best interests from the disclosure of the family court records.[11]  See Levine, 764 F.2d at 595 (the court must determine whether "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest[.]") (citations omitted).  The family court must also make findings that the second and third prongs of the Levine test are met.  See id.

B.    **The Family Court Abused its Discretion in Ordering an Injunction that Prohibits the Release of CPA Records**

        The other portion of the family court's order presents a distinct issue: whether the family court abused its discretion in ordering Parents not to disclose records that are already protected from release by HRS § 587A-40.

---

[11]    We recognize that some cases may require less detailed, specific factual findings that the children would suffer harm from disclosure of their names, for instance, in cases involving allegations of sexual abuse.  See, e.g., In re J.S., 267 Ill.App.3d 145, 150, 640 N.E.2d 1379, 1383 (1994) (holding that the court did not need to make specific findings that disclosure of confidential information would cause a child harm before entering a nondisclosure order in a case where the mother had physically abused the minor for the purpose of attempting to prove that the father sexually abused the minor).

As a threshold matter, the family court has the power to issue injunctive relief under HRS § 571-8.5(a)(10) (Supp. 2016).[12]  See In re Guardianship of Carlsmith, 113 Hawai'i 211, 228, 151 P.3d 692, 709 (2006).  "[A] restraining order is an extraordinary writ subject to contempt for failure to comply[.]" Wahba, LLC v. USRP (Don), LLC, 106 Hawai'i 466, 475, 106 P.3d 1109, 1118 (2005) (quotations omitted).

However, we hold that the family court abused its discretion in entering the injunction prohibiting parties from releasing family court records because the record is insufficient to support the issuance of the Order.[13]  At the hearing, counsel for Parents argued that the State did not submit evidence that

---

[12]     HRS § 571-8.5(a)(10) provides:

(a) The district family judges may:

. . . .

(10) Make and award judgments, decrees, orders, and mandates, issue executions and other processes, and do other acts and take other steps as may be necessary to carry into full effect the powers that are or shall be given to them by law or for the promotion of justice in matters pending before them[.]

[13]     We note that the Order's failure to set forth the reasons for its issuance provides an additional basis for vacating the Order.  In Wahba, this court invalidated a restraining order that failed to state the reasons for its issuance and the factual basis that would support the enjoinment.  106 Hawai'i at 476, 106 P.3d at 1119.  We explained, "Because a restraining order is an extraordinary writ, subject to contempt for failure to comply, it must be set out in specific terms."  Id. at 475-76, 106 P.3d at 1118-19 (citations omitted).  Because the order failed to state the reasons for its issuance, the injunction "accordingly was procedurally defective, and thus, void."  Id. at 476, 106 P.3d at 1118-19.  Here, similarly, the family court's Order did not set forth the factual basis of the Order or sufficiently state the reasons for the Order's issuance, and accordingly, is procedurally defective.  See id.

22

Parents released family court records, and that Parents did not intend to release records. The court asked whether, if it were to issue an order tracking HRS § 587A-40, Parents would abide by the statute. Counsel for Parents confirmed that they would abide by HRS § 587A-40, and reiterated that Parents had not released records. Counsel for DHS conceded that it was not claiming that Parents had released records, but based on the Facebook posting, had a concern that they may do so.

While parents are statutorily required by HRS § 587A-40 not to release records, the concerns raised by DHS are too speculative to support the issuance of an injunction, an extraordinary remedy which would subject Parents to contempt for failure to comply.[14] See Wahba, 106 Hawai'i at 475, 106 P.3d at 1119. Accordingly, we vacate the portion of the order prohibiting the parties from releasing CPA records.

## V. Conclusion

For the foregoing reasons, we vacate the family court's August 25, 2017 Order, effective forty-five days following the filing of the judgment on appeal, and the case is remanded to the

---

[14] Further, part B of the order prohibits disclosure of "information that "will be submitted to the court relating to the subject children[.]" This prohibition is unclear and, accordingly, provides an additional basis for invalidating the order. See Wahba, 106 Hawai'i at 475-76, 106 P.3d at 1118-19 ("Because a restraining order is an extraordinary writ, subject to contempt for failure to comply, it must be set out in specific terms") (citations omitted).

family court for further proceedings consistent with this
opinion.

Jeffrey E. Foster                    /s/ Mark E. Recktenwald
for appellants
                                     /s/ Paula A. Nakayama
Ian T. Tsuda
for appellee                         /s/ Sabrina S. McKenna

                                     /s/ Richard W. Pollack

                                     /s/ Michael D. Wilson