In the Matter of NATIONAL BROADCASTING COMPANY, INC., et al., Petitioners, v ARTHUR J. COOPERMAN, Respondent.

Second Department, April 22, 1986

### APPEARANCES OF COUNSEL

*Cahill Gordon & Reindel (Floyd Abrams, Devereux Chatillion* and *Roberta R. Brackman* of counsel), for National Broadcasting Co., Inc., petitioner, and *Marvyn Kornberg,* petitioner *pro se.* (One brief filed.)

*Robert Abrams, Attorney-General (Howard L. Zwickel* and *Randolph Volkell* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The instant application brought by petitioners National Broadcasting Company, Inc. (hereinafter NBC), and Marvyn Kornberg seeks to prohibit the enforcement of an oral ruling in a pending criminal action *(People v Jeffrey W. Gilbert and Richard A. Pike,* Sup Ct, Queens County, indictment No. 2182/85) which directs all counsel involved in the action to refrain from communicating with members of the news media on matters related to the case. We conclude, based upon our review of the record, that the restrictive order in question is constitutionally impermissible and, accordingly, the petition is granted to the extent of prohibiting enforcement thereof.

The underlying criminal proceeding involved herein arises out of charges against two New York City police officers, Jeffrey W. Gilbert and Richard A. Pike, who are accused of having used an electric stun gun to physically abuse criminal suspects in their custody. Several other police officers are awaiting separate trials on similar charges. In view of the local interest in the Pike and Gilbert trial, the petitioner NBC, the owner and operator of television station WNBC-TV, as well as other members of the news media, have been providing news coverage of the case.

On April 7, 1986, immediately prior to the commencement of the trial, the respondent, a Justice of the Supreme Court who was assigned to preside threat, held a conference in his

chambers with counsel for the parties as well as petitioner Marvyn Kornberg, who represents one of the complaining witnesses. During that conference, the respondent made reference to the press coverage of the case and the possibility that members of the news media might seek to communicate with counsel concerning the progress of the trial. Acting without a formal motion or request by either side or any other person, the respondent then issued the following directive: "[I]n the interest of justice and fair play among other reasons, and also in view of the [strictures] of the Code of Professional Responsibility, I direct Counsel in this case and you, Mr. Kornberg, as an Officer of the Court, to refrain from any discussion of this case with the news media, to avoid any cover[age] or any attribution or any information in the media that would affect a fair trial of this case, and also in the subsequent cases". On April 11, 1986, a further in camera conference was held at which time the respondent amplified his directive so as to bar the transmission of information to the media by counsel even with regard to the time of day that court was to commence on any given date during the trial.

On April 16, 1986, the petitioner NBC applied to the respondent for an order vacating his directive. However, the respondent refused to hear the application. The instant CPLR article 78 proceeding in the nature of prohibition then ensued.

■ At the outset we note that the petitioner NBC has standing to maintain the instant proceeding. Although NBC is not a specific target of the trial court's directive prohibiting discussions of the case, it has been "effectively cut off from any access whatever to important sources of information about the trial" (CBS, Inc. v Young, 522 F2d 234, 237). In view of this infringement on its constitutionally guaranteed right to gather news, NBC clearly has standing to question the validity of the respondent's directive (CBS, Inc. v Young, supra). In any event, petitioner Kornberg, who is directly affected by the respondent's ruling, clearly has such standing.

It is well established that a trial court possesses both the power and the responsibility to take affirmative measures to insure a defendant's 6th Amendment right to a fair trial and to prevent or reduce prejudicial pretrial publicity. This very point was discussed by the United States Supreme Court in *Sheppard v Maxwell* (384 US 333) wherein it reversed the murder conviction of Dr. Samuel Sheppard on the ground that it had been unconstitutionally infected by extensive pretrial and trial publicity. In focusing on the impact of the pretrial

publicity and the trial court's duty to protect a defendant's right to a fair trial, the Supreme Court stated: "Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. In addition, sequestration of the jury was something the judge should have raised *sua sponte* with counsel. If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for the defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function" *(Sheppard v Maxwell, supra,* at pp 362-363).

In sensational criminal cases such as the Sheppard trial, which invite extensive and pervasive publicity and news coverage, a trial court seeking to prevent or reduce potential prejudicial publicity so as to insure a fair trial must give due and careful consideration to both the guaranteed rights of freedom of speech and press accorded under the 1st Amendment and the right to a fair trial guaranteed under the 6th Amendment. Moreover, a trial court must be mindful of the fact that prior restraints upon the rights of free speech and publication by the media bear a heavy presumption of constitutional invalidity which may only be overcome upon a showing of a "clear and present danger" of a serious threat to the administration of justice *(Bridges v California,* 314 US 252, 263; *Matter of Oliver v Postel,* 30 NY2d 171, 180). The tension between the rights guaranteed under the 1st and 6th Amendments was underscored by the Supreme Court in *Nebraska Press Assn. v Stuart* (427 US 539) which involved a challenge

to the validity of an order restraining members of the news media from disseminating information concerning a multiple murder trial. Chief Justice Burger noted: "[T]he Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other. In this case, the petitioners would have us declare the right of an accused subordinate to their right to publish in all circumstances. But if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do * * * Yet it is nonetheless clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it" *(Nebraska Press Assn. v Stuart, supra,* at p 561).

In the *Nebraska Press Assn.* case, the court, in considering the validity of the trial court's order of prior restraint, reviewed the evidence before it to determine "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger" *(Nebraska Press Assn. v Stuart, supra,* at p 562). The court ultimately determined that the restrictive order was constitutionally impermissible since there was no finding that measures short of prior restraint on the press and speech would not have protected the defendant's 6th Amendment rights.

The respondent's directive in the case at bar, does not, however, involve a prior restraint upon members of the news media. Rather, it imposes a restriction upon extrajudicial statements by attorneys involved in a criminal trial. The significance of this distinction lies in the fact that attorneys, as officers of the court, have a legal and ethical responsibility to safeguard the right to a fair trial. In fact, the Code of Professional Responsibility, which was referred to by the respondent, specifically states, *inter alia,* that: "[d]uring the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to the trial, parties, or issues in the trial or other

matters that are reasonably likely to interfere with a fair trial" (Code of Professional Responsibility, DR 7-107 [D]).

While attorneys have a professional responsibility to protect the fairness and integrity of the judicial process, this does not mean that lawyers surrender their 1st Amendment rights as they exit the courtroom (see, In re Halkin, 598 F2d 176, 186; Matter of Markfield v Association of Bar, 49 AD2d 516). Orders restraining extrajudicial comments by parties and attorneys have, in certain cases, been held to be impermissible restrictions of fundamental 1st Amendment rights (see, CBS, Inc. v Young, 522 F2d 234, supra; Chase v Robson, 435 F2d 1059). Courts, however, have upheld similar restraints on extrajudicial statements of attorneys and parties upon a showing of a "reasonable likelihood" of a serious and imminent threat to the administration of justice. This standard was recognized by the Seventh Circuit in Chase v Robson (supra), was specifically adopted by the Tenth Circuit in United States v Tijerina (412 F2d 661, cert denied 396 US 990), and was also applied by the court in People v Dupree (88 Misc 2d 780), in which this issue was discussed at considerable length (but see, Chicago Council of Lawyers v Bauer, 522 F2d 242, cert denied 427 US 912; Matter of Markfield v Association of Bar, 49 AD2d 516, supra).

We are in agreement with the view that extrajudicial statements of attorneys may be subject to prior restraint by a trial court upon a demonstration that such statements present a "reasonable likelihood" of a serious threat to a defendant's right to a fair trial. In fact, this conclusion is supported by the Supreme Court's statement in Sheppard v Maxwell (384 US 333, 363, supra) that "[c]ollaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures". Similarly, in Nebraska Press Assn. v Stuart (427 US 539, 564, supra), the Supreme Court stated: "This Court has outlined other measures short of prior restraints on publication tending to blunt the impact of pretrial publicity. See, Sheppard v. Maxwell, supra, at 361-362. Professional studies have filled out these suggestions, recommending that trial courts in appropriate cases limit what the contending lawyers, the police, and witnesses may say to anyone. See American Bar Association Project on Standards for Criminal Justice, Fair Trial and Free Press 2-15 (App. Draft 1968)". The clear import of these statements is a recognition that the tests which must be applied in cases

involving prior restraints on publication are stricter than the tests which may be applied to prior restraints upon attorneys, parties, jurors and court personnel, etc. However, a trial court may not impose prior restraints upon attorneys and other participants in a trial without the requisite showing of a necessity for such restraint and a determination that less restrictive alternatives would not be just as effective in assuring the defendant a fair trial *(see, Nebraska Press Assn. v Stuart,* 427 US 539, 562, *supra).*

■ Turning to the facts of the case at bar, we conclude that the respondent's directive prohibiting counsel from communicating with the news media on any matters related to the pending trial is constitutionally impermissible.

In the first instance, the record before this court is devoid of any evidence to support a finding that the extrajudicial statements of counsel involved in the trial are reasonably likely to pose a serious threat to the defendants' 6th Amendment right to a fair trial. While the charges against the police officers in question have been the subject of somewhat extensive news reports, none of the parties involved in the trial claimed that the news coverage had endangered the impartiality and fairness of the proceedings, and the respondent, in issuing his directive, made no such finding.

Secondly, even assuming that such a finding had been made, there is no indication in the record that less restrictive alternatives to the prior restraint on counsel's extrajudicial statements would not have been just as effective in preserving the police officers' right to a fair trial. Sequestration of the jury, postponement of the trial to allow public attention to subside, a change of venue, a comprehensive and searching voir dire of potential jurors and the use of emphatic instructions to the jurors regarding their sworn duty to decide the case only on the evidence presented at trial, are all less restrictive alternatives to a prior restraint upon the free speech of the attorneys and other participants in the case *(see, Sheppard v Maxwell,* 384 US 333, 362, 363, *supra; Nebraska Press Assn. v Stuart,* 427 US 539, 563-564, *supra).*

Thirdly, the respondent's directive is vague and overbroad as to the subjects upon which discussion is prohibited. According to the respondent's own interpretation of his direction, the attorneys are prohibited from speaking to the news media on *any* matters related to the trial, including innocuous information concerning the time upon which the court would convene

on any given date. This extreme example of prior restraint on the freedom of speech cannot escape the proscription of the 1st Amendment *(see, CBS, Inc. v Young,* 522 F2d 234, 240, *supra).*

Thus, assuming that the respondent had properly concluded that prior restraint upon the extrajudicial statements of attorneys was necessary, the prior restraint should have been limited solely to information or statements which might be likely to impugn the fairness and integrity of the trial. For example, in *People v Dupree* (88 Misc 2d 780, *supra),* the court, while recognizing its authority to impose prior restraints upon the extrajudicial statements of counsel, acknowledged that its order in that regard was overbroad since it was not limited solely to the dissemination of potentially prejudicial information, and it thereupon limited its order to the prohibition of the disclosure of specific categories of prejudicial information. Since the respondent's oral directive at issue is not drawn with sufficient precision and clarity, it cannot be sustained under the 1st Amendment.

Accordingly, the petition should be granted to the extent of prohibiting the respondent from enforcing his directive. The demand in the petition that the respondent be prohibited from issuing similar directives in other so-called stun gun cases is premature since he has not threatened to do so.

MOLLEN, P. J., MANGANO, THOMPSON and BROWN, JJ., concur.

Petition granted to the extent that the respondent is prohibited from enforcing his oral directive barring the attorneys for the parties and witnesses in the criminal action entitled *People v Jeffrey W. Gilbert and Richard A. Pike* (Sup Ct, Queens County, indictment No. 2182/85) from discussing that case with the news media. In all other respects petition denied. No costs or disbursements are awarded.