*542 OPINION OF THE COURT
Howard E. Goldfluss, J.
The recurrent issue raised by counsel’s motion to enjoin the District Attorney and the police department from providing information to the media concerns the classic conflict of rights —the public’s right to know under the First Amendment and the accused’s inviolate right to a fair trial under the Sixth. It must be stated at the outset, that the defendant has a heavy burden. This is a "prior restraint” request, and, as such, the Supreme Court has viewed it with a strong presumption against its constitutional validity. (See, Carroll v Princess Anne, 393 US 175.) An emphatic distinction exists between threats of criminal sanctions after publication, and enjoining in advance the dissemination of news. The former could chill freedom of expression — the latter could freeze it. Nevertheless, the Supreme Court has also indicated the extrajudicial statements of attorneys may be subject to prior restraint by a trial court upon a demonstration that such statements present a "reasonable likelihood” of a serious threat to a defendant’s right to a fair trial. (See, Sheppard v Maxwell, 384 US 333, 363.) Since no general priority has been declared by the Supreme Court, the trial court must strike a balance between the competing interests and declare a priority in a particular case depending upon its special facts and circumstances.
Robert Fioretti, a New York City police officer at the time of the alleged incident, was indicted on January 13, 1987 charged with grand larceny and criminal possession of a forged instrument. Specifically, it is alleged that on or about October 7, 1986, at the Bowery Bank in Bronx County, the defendant presented two withdrawal slips bearing the signature of Rita Fioretti, his wife. It is further alleged that her signature was forged, and that approximately three days later he deposited the fund secured from such larcenous withdrawal in a joint account in which Rita Fioretti had no right, title or interest.
The complication giving rise to the issue raised herein is the fact that on or about August 10, 1986, Rita Fioretti disappeared from the home in which she last resided with the defendant. As of this time, she remains listed as a missing person and her disappearance continues to be a subject of intense police investigation.
It is not disputed that the District Attorney’s office and the Police Department of the City of New York have issued *543 statements indicating that she is missing; and that they are searching for her, and that the media have published this information.
It is this information — the disclosure by the Bronx District Attorney and the police department of any fact or material of any kind which pertains to the said investigation, that the defendant seeks to enjoin. He bases his request on what he characterizes as a "pervasive innuendo”, that there is a connection between the forgery on October 7, 1986 and Rita Fioretti’s prior disappearance on or about August 10, 1986. Simply stated, he’s taken the position that he cannot possibly receive a fair trial if the jury’s mind is poisoned by the suspicion of such connection.
The moving papers include excerpts from various metropolitan newspapers which he alleges will cause prejudice of a constitutional magnitude and that its continuance will surely develop into fair trial deprivation.
For example:
November 6, 1986 — New York Post—
"Mrs. Fioretti vanished on August 10 — and her disappearance was never reported by the man she was planning to divorce, highly decorated police officer, Robert Fioretti.
"He says she ran away, but police searched the waters around City Island yesterday after Bronx District Attorney Mario Merola, said she may have met with foul play.
"Police and the Bronx D.A. say they are searching for a missing person — and have no suspects.”
November 7, 1986 — New York Post—
"Peter Grishman, Executive Assistant to the Bronx District Attorney said, 'Mrs. Fioretti vanished the morning of August 10, after arguing with her husband Robert Fioretti, a 37 year old Queens cop who had been living with his pregnant police partner.”
November 1986 — Daily News—
"A Bronx Grand Jury meeting since November has been looking into the possibility that Mrs. Fioretti’s name was forged and the money was fraudulently obtained. Prosecutors reportedly delayed some Grand Jury hearings until after the Christmas Holidays in the hopes that Mrs. Fioretti would contact her children Bobby 14, and Steven 3.
"Meanwhile, investigators revealed yesterday that they are looking at a possible link between the disappearance of Mrs. *544 Fioretti and the disappearance of the wife of another Queens cop. ”
The District Attorney of Bronx County is joined in opposing defendant’s application by the Police Department of the City of New York. The National Broadcasting Company has requested intervenor status and has also submitted answering papers and memorandum. It has been repeatedly held that the right of a disseminator of news to the public has a constitutionally guaranteed right to question any directive which enjoins, curtails, or limits to any degree its access to important sources of information. (See, Matter of National Broadcasting Co. v Cooperman, 116 AD2d 287 [2d Dept 1986]; CBS Inc. v Young, 522 F2d 234; Central S. C. Ch. v Martin, 556 F2d 706 [4th Cir 1977], cert denied 434 US 1922.) Accordingly, W.N.B.C. — T.V. has standing to challenge any order which would impair its ability to gather news.
While prior restraint orders must be subject to the closest scrutiny, a "gag” order, such as the one requested herein, may be upheld, but only when it is clearly established that there are serious and imminent threats to the fairness of the trial (see, CBS Inc. v Young, supra; Matter of Markfield v Association of Bar, 49 AD2d 516); or when the order is narrowly drawn (In re Hakin, 598 F2d 176, 193) and less restrictive alternatives are not available (see, Nebraska Press Assn. v Stuart, 427 US 539).
However, there exists here a third ingredient which is unique in the history of cases requiring First Amendment and Sixth Amendment balance. The Police Department of the City of New York and the Bronx District Attorney’s office contend that the dissemination of relevant information to the media concerning the disappearance of Rita Fioretti is a means they utilize to alert the public. By so doing, it is hoped that the public will cooperate in the event that some information can be forthcoming about her whereabouts. It is obvious that any information — where she had last been seen — or when — or with whom, could be helpful in a continuing police investigation. Recognition or recollection, even by chance, could be a positive step in helping the authorities locate her. Injunctions by a court of this accepted police procedure could block a source of information. Rita Fioretti may, as the District Attorney suggested, have been the victim of foul play. She may be merely missing. But she is the subject of a police investigation and even if this court had jurisdiction to interfere, exercising it *545 under these circumstances would be a clear abuse of judicial power.
Even if that wasn’t a determinative factor, a "gag” order would not be appropriate herein. Decisions on this issue have emphasized that prior restraint is the most serious and the least tolerable infringement on First Amendment rights (see, Carroll v Princess Anne, supra) — characterized as an immediate and irreversible sanction. (See, Nebraska Press Assn. v Stuart, 427 US 539, supra.)
Special protection has been afforded the reporting of public judicial proceedings (see, Cox Broadcasting Corp. v Cohn, 420 US 469; Craig v Harney, 331 US 367) especially when applied to the reporting of criminal proceedings. Ostensibly, there may be circumstances where pretrial publicity impairs the defendant’s right to a fair trial. (See, Sheppard v Maxwell, supra.) But in the Sheppard case, the court set down a stringent test: the publicity must be so egregious, so pervasive, and so tainted that a fair trial would be virtually impossible. And even under circumstances where that extreme situation is reached, the Supreme Court indicted that it would not have disturbed the conviction in Sheppard had the Trial Judge utilized similar alternative safeguards that are referred to in the Nebraska Press Assn. case (supra). The trial court in Sheppard erred when it invoked no procedure to defray the harm or prejudice that the publicity could have caused. As set forth in the Nebraska case, the court has the option of:
(A) Changing trial venue to a place less exposed to the intense publicity that seemed imminent to the locus of the trial;
(B) Postponement of the trial to allow public attention to subside;
(C) Searching questions of prospective jurors as Chief Justice Marshall used in the Aaron Burr case to screen out those with fixed opinions as to guilt or innocence;
(D) The use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court; and
(E) If absolutely necessary, sequestration of the jury.
In view of these available alternatives, one wonders when, if ever, a prior restraint order can be made. Witness the determination by the Court of Appeals, Second Circuit, in one of the most publicized cases in modern history. In refusing to *546 enjoin the broadcast of F.B.I. videotapes of the defendant (and future defendants) for participating in criminal conduct, the court observed: "Defendants, as well as the news media, frequently overestimate the extent of the public’s awareness of news. In this very case, despite the extensive publicity about Abscam that unfortunately accompanied the initial relevations and that was legitimately reviewed when the indictments were returned, about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge. Even the intensive publicity surrounding the events of Watergate, very likely the most widely reported crime of the past decade, did not prevent the selection of jurors without such knowledge of the events as would prevent them from serving impartially.” (In re Application of National Broadcasting Co., 635 F2d 945, 953 [2d Cir 1980]; emphasis added.)
The apparent reality is that the Supreme Court has indicated a preference of the First Amendment over the Sixth Amendment as they apply herein, although the framers of the Constitution avoided any reference to such preference. It is unfortunate that the Supreme Court has not indicated whether this preference is the law of the land, because in attempting to please the partisans of both of these sacred constitutional rights, we satisfy neither. The closest the Supreme Court came to actually declaring a definitive pronouncement is found in the concurring opinion by Mr. Justice Byron White in the Nebraska case, when with reference to the prior restraint previously ordered at the State level, he said: "I should add, however, that for the reasons which the Court itself canvasses there is grave doubt in my mind whether orders with respect to the press such as were entered in this case would ever be justifiable.” (427 US, supra, at 570-572; emphasis added.)
While this court is denying defendant’s motion for the relief requested, such denial is not dispositive of the question of whether his right to a fair trial has or will be impaired. At the least, his assertions raise a legitimate issue in this regard. Should danger of that possibility exist at the time of trial, this court will adopt and utilize any one or more of the alternatives set down in Nebraska (supra) and Sheppard (supra).
The defendant, in his prayer for relief, seeks to enjoin the *547 District Attorney of Bronx County from disclosing illegal leaks of Grand Jury material. There has been no showing that such activity has in fact occurred, and therefore that portion of his motion is dismissed as moot. The balance of the motion is in all respects denied.