[840 NYS2d 575]

In the Matter of Ronald P. Fischetti, Petitioner, v Micki A. Scherer et al., Respondents.

First Department, July 19, 2007

### APPEARANCES OF COUNSEL

*Ronald P. Fischetti,* New York City, petitioner pro se.

*Andrew M. Cuomo, Attorney General,* New York City (*Katherine M. Timon* of counsel), for Micki A. Scherer, respondent.

*Robert M. Morgenthau, District Attorney,* New York City (*Ameer Benno* of counsel), respondent pro se.

### OPINION OF THE COURT

SAXE, J.

Petitioner is the attorney for criminal defendant James Barbour, a well-known Broadway actor, who was charged with having sexually abused a 15-year-old girl in 2001. This petition challenges an order of the Supreme Court, Criminal Term, "directing the defense counsel to refrain from publishing the name of the complainant as a means of investigating her credibility."

The issue arose based upon charges of criminal sexual act in the third degree (Penal Law § 130.40 [2]) and sexual abuse in the third degree (Penal Law § 130.55) first made in a felony complaint filed against Barbour on April 4, 2006. He was indicted on October 30, 2006, and was scheduled to be arraigned on the indictment on December 6, 2006. The day before the scheduled arraignment, the District Attorney's office provided information regarding the matter to the New York Daily News and the New York Post. The tabloid coverage in those two newspapers on December 6, 2006 included a cover page headline in the Post, "Beast of Broadway: Sex rap vs. 'Beauty' Star," and both articles described charges that Barbour seduced a 15-year-old fan into "groping" him and allowing him to "grope" or "molest" her, and that on another occasion the following month they engaged in oral sex. Both papers' articles reported a hotline telephone number created by the District Attorney's office for anyone else who might have similar criminal allegations to

report against Barbour. In fact, the next day's New York Post reported that at the arraignment, the People had provided information that another girl had come forward claiming Barbour seduced her seven years earlier, when she was 13, although the statute of limitations prevented any prosecution of the claimed crime.

At the next court appearance in the matter, on December 20, 2006, the Assistant District Attorney protested about comments made to the press and the media by defense counsel, and asked the court to direct both sides to refrain from commenting on the evidence outside the courtroom. In responding to this oral application, Barbour's attorney, petitioner Ronald P. Fischetti, proposed to set up his own hotline, for any men who had been falsely accused by this complainant. The court granted the People's oral application as an interim matter, then, upon written submissions, issued the challenged order dated February 6, 2007, specifically granting the People's application only "to the limited extent" of "directing the defense counsel to refrain from publishing the name of the complainant as a means of investigating her credibility." The court reasoned that such publicity would taint the jury pool, and added, "there are more appropriate and reliable ways to investigate such issues which do not include publication of the complainant's name in the press."

Petitioner now seeks an order in the nature of prohibition, vacating the February 6 order and prohibiting the court from initiating contempt proceedings for any violation of the order.

The threshold issue is whether CPLR article 78 relief is available to petitioner. The extraordinary remedy of prohibition lies only where there is a clear legal right and the respondent is acting without jurisdiction or in excess of his or her authorized powers (see *Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988]). However, as petitioner points out, this Court has granted article 78 relief vacating gag orders preventing counsel from speaking with the press in the course of criminal prosecutions (see *Matter of New York Times Co. v Rothwax*, 143 AD2d 592 [1988]; *Matter of National Broadcasting Co. v Cooperman*, 116 AD2d 287 [1986]).

In addressing the merits of his application, petitioner begins by emphasizing that he merely seeks to use the same investigative tool as that used by the People: publishing a hotline number in the newspaper in an effort to gather evidence. He goes on to protest that there is no statutory or other reasonable justification for the prohibition, pointing out that the motion court

conceded that he, as defense counsel, is not the type of "public officer or employee" covered by Civil Rights Law § 50-b. Petitioner argues that the statute does not give the court authority to order restrictions on his speech.

Initially, petitioner's protestations that it would be unfair and inequitable for him to be denied use of the same investigative procedures used against his client by the police and prosecutors, while understandable, do not form an appropriate ground for vacating the challenged order. It has been observed that there exists an "uneven playing field" between prosecutors and defense counsel in criminal cases (*see generally* Liotti and Zeh, *The Uneven Playing Field: Ethical Disparities Between the Prosecution and Defense Functions in Criminal Cases,* 17 Touro L Rev 467, 494-498 [2001]). Prosecutors have pronounced advantages in the initial processes of investigation and prosecution, including the ability to issue press releases and conduct press conferences calculated to assist them in presenting their view of the case to the public, while defense counsel is often prevented from doing the same (*id.* at 496). Nevertheless, the question of law to be answered here is whether the challenged order constituted an improper violation of petitioner's or his client's rights. In this analysis, the prior conduct of the District Attorney's office is less central than consideration and balancing of the respective rights and interests at stake.

The rights petitioner claims are violated by the challenged order are his First Amendment right of free speech and his client's right under the Sixth Amendment to the effective assistance of counsel, which encompasses counsel's duty to make reasonable investigations (*see Strickland v Washington,* 466 US 668, 691 [1984]). Petitioner also contends that the challenged prohibition against publication of the complainant's name in the media is not directly authorized by statute. In particular, he argues that Civil Rights Law § 50-b, although it begins by pronouncing that "[t]he identity of any victim of a sex offense . . . shall be confidential," only specifically prohibits disclosure of documents identifying the victim where that disclosure is by "public officer[s] or employee[s]." He adds that the Rape Shield Law, CPL 60.42, applies only to in-court evidentiary rulings.

As to counsel's First Amendment rights, prior restraints of speech are unquestionably viewed with a strong presumption against their validity (*see Carroll v President & Comm'rs of Princess Anne,* 393 US 175, 181 [1968]). Nevertheless, it is important to remember that reasonable limitations may be

placed on speech where an important countervailing interest is being served (see *Garcia v Gray*, 507 F2d 539, 543 [10th Cir 1974], *cert denied* 421 US 971 [1975]).

That is why, in criminal matters, "extrajudicial statements of attorneys may be subject to prior restraint by a trial court upon a demonstration that such statements present a 'reasonable likelihood' of a serious threat to a defendant's right to a fair trial" (*Matter of National Broadcasting Co. v Cooperman*, 116 AD2d at 292). Indeed, in general, an attorney acting as counsel in a legal matter may be prohibited from making extrajudicial statements which are likely to materially prejudice the case (see *Gentile v State Bar of Nev.*, 501 US 1030 [1991]; Code of Professional Responsibility DR 7-107 [22 NYCRR 1200.38]). In such instances, the attorney's First Amendment rights are overcome by concern for the parties' fair trial rights.

The permissible prohibitions discussed in those matters, relating to speech which threatens a party's right to a fair trial, are not necessarily the only circumstances in which a reasonable limit may be placed upon speech in connection with a criminal matter. Other important interests may also justify a reasonable limitation on free speech. It is appropriate to take into consideration here both the privacy interests of the complainant herself, and the interest of the State in encouraging victims of such crimes generally to report these offenses without fear of exposure. In fact, in *Florida Star v B. J. F.* (491 US 524 [1989]), where the United States Supreme Court reversed an award of civil damages to a rape victim whose name had been published in a newspaper in violation of a state statute, the Court nevertheless recognized that the State's interest in encouraging victims of sex crimes to report these offenses without fear of exposure is a "highly significant" one (see *Florida Star v B. J. F.*, 491 US at 537). Indeed, it is hard to imagine many victims of sex crimes being willing to come forward if they found that their names were subject to being published in newspapers in relation to those crimes, in a purported effort by defense counsel to conduct investigations into possible grounds to impeach the victim's credibility. Additionally, the challenged order certainly finds substantial support in the public policy behind the legislative enactment of statutes protecting the identity and reputation of complainants in sex offense cases, especially that portion of Civil Rights Law § 50-b (1) which declares that the identity of the victim of a sex offense is confidential.

Moreover, the prohibition on petitioner's speech was quite limited, precluding only his disclosure of the complainant's

name. Importantly, as the motion court recognized, petitioner did not set out a good faith basis for the need to make the proposed announcement. A demonstration of counsel's inability to conduct an effective investigation, or the prospect that defendant's right to a fair trial was being impaired, might warrant closer scrutiny of the complainant's and the State's asserted interests in protecting her privacy. But, in the absence of any such good faith basis for the suggestion that the complainant had a history of making false accusations, the significant interest in encouraging victims of such crimes to report these offenses without fear of exposure outweighs what would amount to a fishing expedition by petitioner. Nor is the significant interest in protecting the complainant outweighed by the fact that the District Attorney's office publicized defendant's name in the manner petitioner proposes to publicize complainant's.

Finally, there is some logic to petitioner's criticism of the justification for the challenged order that the court relied upon, namely, that of protecting the pool of prospective jurors from prejudicial pretrial publicity. Certainly, the publication of the alleged victim's name would have no more of an impact on the jury pool than the People's publication of defendant's name and the charges against him. Nevertheless, the weighing of all concerns in accordance with the State's broad interest in the "fair administration of justice" (*see Gentile v State Bar of Nev.*, 501 US at 1074, quoting *Nebraska Press Assn. v Stuart*, 427 US 539, 601 n 27 [1976, Brennan, J., concurring]) justifies the challenged order.

Accordingly, the petition challenging the order of the Supreme Court, New York County (Micki A. Scherer, J.), dated February 6, 2007, which granted the People's application to the extent of directing defense counsel to refrain from publishing the name of the complainant, should be denied, and the proceeding dismissed, without costs.

TOM, J.P., MARLOW, SULLIVAN and WILLIAMS, JJ., concur.

Petition challenging order, Supreme Court, New York County, dated February 6, 2007, which granted the People's application to the extent of directing defense counsel to refrain from publishing the name of the complainant, denied, and the proceeding dismissed, without costs.