| **Nunez-Unda v Adrien** |
|:---:|
| 2024 NY Slip Op 33933(U) |
| November 4, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 650971/2022 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

------------------------------------------------------------------------------------X

JESUS NUNEZ-UNDA,

                                          Plaintiff,

                        - v -

THIBAULT LOUIS PHILIPPE ADRIEN, LAFAYETTE RE
MANAGEMENT LLC,POL OPERATOR LLC,

                                          Defendant.

------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650971/2022 |
| **MOTION DATE** | 11/03/2023, 01/12/2024, 10/16/2024 |
| **MOTION SEQ. NO.** | 004 006 009 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 86, 88, 93, 94, 109, 110

were read on this motion to/for _____ DISMISS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 120, 122, 123

were read on this motion to/for _____ DISMISS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 009) 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 170, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 275, 276, 277, 278, 279

were read on this motion to/for _____ MISCELLANEOUS _____.

Upon the foregoing documents and for the reasons set forth below, POL Operator LLC (**POL**)'s

motion (Mtn. Seq. No. 004) to dismiss Jesus Nunez-Unda's claims is GRANTED solely to the

extent that the aiding and abetting fraud (thirteenth) cause of action is dismissed.

Mr. Nunez-Unda's motion (Mtn. Seq. No. 006) to dismiss Lafayette Re Management LLC

(**Lafayette**)'s counterclaims sounding in (i) breach of contract (first and third causes of action),

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**
**Motion No.  004 006 009**

**Page 1 of 13**

(ii) breach of fiduciary duty (fourth cause of action), and (iii) misappropriation (fifth cause of action) is DENIED in its entirety.

Lafayette's motion (Mtn. Seq. No. 009) seeking the issuance of a gag order is also DENIED.

As discussed below, however, this case lends itself to swift discovery and resolution by dispositive motion or trial. The heart of the dispute stems from whether the parties intended that Mr. Nunez-Unda would receive additional compensation for his role as interim CEO as to a company that was admittedly never ultimately acquired. According to Mr. Nunez-Unda, his Employment Agreement (hereinafter defined) does not compensate him for that. More specifically, he says that the parties intended something different for his compensation memorialized in his Job Description (hereinafter defined) in implementing the Business Plan of a company grown organically and one which was acquired. According to the defendants, this is not so and, in fact, the acquisition never took place because Mr. Nunez-Unda sabotaged it by disclosing the terms of the APA to a third party. The provision at issue (the **Job Description**) provides as follows:

JOB DESCRIPTION

- The primary mission of the Employee is to create and implement the Business Plan of an internal loan origination company or to carry out the acquisition of a loan origination company.
- Secondary roles will include assisting the Fund Controller or help manage the analyst pool

(NYSCEF Doc. No. 15, at 12). Resolution of the facial ambiguity created by the lack of parallelism (*i.e., "*implement the Business Plan of" facially relates to the creation of a loan

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                    Page 2 of 13
**Motion No.  004 006 009**

2 of 13

company but is not included in the language as to carrying out the acquisition of a loan origination company) will resolve much (but not all) of what is at issue in this case.

Expedited discovery is also appropriate in this case given Mr. Nunez-Unda's highly inflammatory remarks made to third parties about Thibault Louis Phillipe Adrien and as to the factual basis he had when he made those remarks. As discussed, it may be that Mr. Adrien has a counterclaim sounding in defamation *per se* as these statements were personnel and were made about Mr. Adrien in his professional capacity. Lastly, the Court notes that expedited discovery is appropriate given the defendants' desire for a gag-order and their claims that Mr. Nunez-Unda tanked their deal by, among other things, disclosing the material terms to a third party.

## DISCUSSION

Reference is made to (i) a certain Decision and Order of the Court, dated July 7, 2023 (the **Prior Decision**; NYSCEF Doc. Nos. 62, 63, and 64), (ii) a certain Employment Agreement (the **Employment Agreement**; NYSCEF Doc. No. 15), dated March 6, 2020, by and between Lafayette and Mr. Nunez-Unda, (iii) a certain Asset Purchase Agreement (the **APA**; NYSCEF Doc. No. 176), dated March 9, 2021, by and between POL, Hamilton, and Patch of Land, Inc. (**Patch**), (v) a certain First Amended Complaint (the **AC**; NYSCEF Doc. No. 67), dated August 31, 2023, and (vi) a certain Answer with Amended Counterclaims (the **Counterclaims**; NYSCEF Doc. No. 72), dated October 27, 2023.

On a motion to dismiss pursuant to CPLR § 3211 (a)(7), the court must afford the pleading a liberal construction and accept the facts as alleged as true, according the plaintiff the benefit of

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                **Page 3 of 13**
**Motion No.  004 006 009**

3 of 13

every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Bare legal conclusions are not accorded favorable inferences, however, and need not be accepted as true (*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1st Dept 1999]).

## I.    POL is Not Entitled to Dismissal of Mr. Nunez-Unda's Quantum Meruit Claim

Quantum meruit requires (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor and (4) the reasonable value of the services (*Martin H. Bauman Assocs., Inc. v H & M Int'l Transp., Inc.*, 171 AD2d 479, 484 [1st Dept 1991]).

The AC alleges that, beginning in February 2021, Mr. Nunez-Unda began performing work as the interim CEO of POL that was outside the scope of the Employment Agreement, not reduced to writing, and performed at Mr. Adrien's request (NYSCEF Doc. No. 67 ¶ 517). In their opposition papers, POL contends that these services were performed pursuant to Mr. Nunez-Unda's obligations under the Employment Agreement, and thus an enforceable contract governs such that the Mr. Nunez-Unda is precluded from bringing a quantum meruit claim (NYSCEF Doc. No. 84, at 12). As discussed above, discovery is required to address the lack of parallelism in the Job Description so that the Court can determine what the Employment Agreement means -- *i.e.*, whether the parties intended something different as to implementing the business plan of a company grown organically then implementing the business plan of a company acquired. Put another way, taking the allegations as true as the Court must at this stage of the litigation, discovery is required to address this potential ambiguity (*Talos Capital Designated Activity*

**650971/2022    NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                    **Page 4 of 13**
**Motion No.  004 006 009**

4 of 13

[* 4]

*Company v 257 Church Holdings LLC,* 205 AD3d 509 (2022)]. Given the dispute over what the language at issue means in the Job Description, and the parties' intent as to the scope of Mr. Nunez-Unda's services and attenuate compensation covered by the Employment Agreement, the defendants are not entitled to dismissal Mr. Nunez-Unda's quasi-contract claim for recovery (*see Loheac v Children's Corner Learning Ctr.*, 51 AD3d 476, 476 [1st Dept 2008]; *Curtis Props. Corp. v Greif Cos.*, 236 AD2d 237, 239 [1st Dept 1997] [party is not precluded from proceeding on breach of contract and quasi-contract theories where contract does not cover dispute in issue]). Notwithstanding the foregoing, if discovery reveals that the parties did not contemplate a difference, POL has leave to bring an order to show cause seeking summary judgment (*see Elhanani v Kuzinez*, 172 AD3d 590, 592 [1st Dept 2019]).[1]

## II.    Mr. Nunez-Unda's Aiding and Abetting Fraud Claim Against POL is Dismissed

To properly state a claim for aiding and abetting fraud, the complaint must allege (i) the existence of the underlying fraud, (ii) "knowledge of this fraud on the part of aider and abettor;" and (iii) "substantial assistance by the aider and abettor in the achievement of the fraud" (*Stanfield Offshore Leveraged Assets, Ltd. v Metropolitan Life Ins. Co.*, 64 AD3d 472, 476 [1st

---

[1] For the avoidance of doubt, the defendants are not entitled to dismissal based on their argument that the documents indicate that they had a foot fault in ***their*** appointment of Mr. Nunez-Unda as Chief Executive Officer based on the signature block of POL's Consent of the Manager of POL Operator in Lieu of Meeting, dated April 15, 2021 (**POL's April Minutes**; NYSCEF Doc. No. 177) in that Mr. Adrien signed as Manager and because the signature block does not read Hamilton Acquisition Holdings LLC (**Hamilton**), by Lafayette RE Management LLC by Mr. Adrien. Initially, the Court notes that Mr. Adrien signed the Consent of the Manager of POL Operator in Lieu of Meeting (**POL's July Minutes**; NYSCEF Doc. No. 178), dated July 10, 2021, removing Mr. Nunez-Unda and appointing himself as Chief Executive Officer in exactly the same way. As such, if POL's April Minutes are not effective based on the signature block, then POL's July Minutes are not effective either. More importantly, however, the Limited Liability Company Agreement of POL Operating LLC appointed Mr. Adrien as the Manager (NYSCEF Doc. No. 174) and, as the Manager, he could appoint a CEO if he chose to do so. The fact that the Operating Agreement required a consent from Hamilton to a change of Mr. Adrien as Manager of POL to "such other person or persons as may be appointed by" Hamilton does not change this result. In any event, the signature block demonstrates Mr. Adrien is the Manager of Hamilton as well. As such, given the corporate documents of which Mr. Adrien is aware, POL's April Minutes and POL's July Minutes taken together are *prima facie* evidence of his intent to have signed these documents properly.

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                     **Page 5 of 13**
**Motion No.  004 006 009**

5 of 13

Dept 2009]). According to Mr. Nunez-Unda, Mr. Adrien and Lafayette defrauded him into believing that he was going to be the CEO of POL. This is virtually identical to the claim sounding in breach and quantum meruit (NYSCEF Doc. No. 94, at 21). Equally importantly, the AC fails to allege any statements that constitute present statements of material fact rather than a promises of future intent. Inasmuch as there is no actionable predicate fraud, no aiding and abetting claim can be asserted. Thus, the claim must be dismissed.[2]

### III. Lafayette's Breach of Contract Counterclaims Against Mr. Nunez-Unda are not dismissed

To prevail upon a cause of action for breach of contract, a plaintiff must prove that: (i) a contract exists, (ii) the plaintiff performed in accordance with the contract, (iii) the defendant breached its contractual obligations, and (iv) the defendant's breach resulted in damages (*34-06 73, LLC v Seneca Ins. Co.*, 39 NY3d 44, 52 [2022]).

In Section 4.2 of the Employment Agreement, the parties agreed that Mr. Nunez-Unda would not, during his employment with Lafayette and for twelve months thereafter, solicit or induce any employee of Lafayette to leave Lafayette's employment:

> 4.2. <u>Non-Recruitment of Employees</u>. For and in consideration of the Company's entering into this Agreement, and in further consideration of the Employee's exposure to the Confidential Information of the Lafayette Entities, the Employee agrees that the Employee shall not, during the Employee's employment with the Company and for a period of 12 months after the Employee's employment with the Company is terminated by either party for any reason (the "Restricted Period"): (a) directly or indirectly hire, induce, or solicit (or assist any person or entity to hire, induce, or solicit) for employment any person who is, or within six (6) months prior to the date of such hiring,

---

[2] For the avoidance of doubt, it is irrelevant that Mr. Nunez-Unda surrendered his leased apartment and made plans to move because the compensation he says he is entitled and negotiated already factored in these expenses such that if he is successful on his other claims he otherwise would receive that which he expected and would be made whole.

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                **Page 6 of 13**
**Motion No.  004 006 009**

6 of 13

inducement, or solicitation was, an employee of the Lafayette Entities (as defined below) or (b) induce or solicit (or assist any person or entity to induce or solicit) any person who is an employee of the Lafayette Entities to terminate his/her employment relationship with the Lafayette Entities.

Initially the Court notes that to properly allege breach, it is not necessary to allege that the solicitation resulted in an employee leaving Lafayette. The provision is alleged to have been breached when Mr. Nunez-Unda solicited Lafayette's Marketing Director Maylis de Lacoste to leave Lafayette for other employment. More specifically, Lafayette alleges that, in April 2021, Mr. Nunez-Unda sent Ms. de Lacoste Slack messages in which he offered to introduce her to a headhunter, and Ms. de Lacoste subsequently resigned in June 2021 (NYSCEF Doc. No. 72 ¶¶ 202-203). To the extent that Mr. Nunez-Unda argues that Lafayette does not adequately plead the requisite element of causation, the affidavit of Ms. de Lacoste (the **de Lacoste Affidavit**; NYSCEF Doc. No. 278) supports the existence of a causal connection between Mr. Nunez-Unda's alleged breach and Ms. de Lacoste's subsequent departure from Lafayette:

4. In late winter/early spring 2021, Jesus Nunez Unda showed interest in helping me leave Lafayette, including by making introductions to a headhunter.

5. In April 2021, I left Lafayette to join ROC Capital.

(*id.* ¶¶ 4-5). This is sufficient at this stage of the pleadings. As discussed, damages are also now properly alleged. Thus, dismissal is not warranted.

For completeness, Lafayette also alleges that Mr. Nunez-Unda breached Sections 4.1 and 4.5 of the Employment Agreement. To wit, Lafayette contends that Mr. Nunez-Unda disclosed confidential information obtained from company devices regarding Lafayette's business plan for its planned acquisition of Patch to parties adverse to Lafayette for the purpose of interfering with

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**
**Motion No.  004 006 009**

**Page 7 of 13**

7 of 13

the acquisition (NYSCEF Doc. No. 72 ¶¶ 214-223). Pursuant to Sections 4.1 and 4.5, the parties

agreed that Mr. Nunez-Unda would at all times hold Lafayette's confidential information in

confidence and would not use or disclose such confidential information unless doing so for the

benefit of Lafayette and to authorized persons only:

> 4.1. <u>Recitals</u>. While employed with the Company, the Employee will be employed in a position of trust and confidence, and as a result, the Employee will be provided with the Lafayette Entities' trade secrets and confidential or proprietary information, including but not limited to information related to (a) reports, pricing, selling, purchasing, and pricing procedures, and financing methods of the Lafayette Entities, and any specific and proprietary techniques utilized by the Lafayette Entities in designing, developing, testing, marketing, or performing services for clients, customers, and accounts of the Lafayette Entities; (b) the business plans and financial statements, reports, and projections of the Lafayette Entities; (c) identities, addresses, contact persons, purchasing habits, and all other information related to the Company's customers, clients, and investors, purchasers, lenders, or any other confidential information relating to or dealing with the business operations or activities of the Lafayette Entities; and (d) information concerning the licenses, permits, or other authorizations relevant to the Lafayette Entities' business, made known to the Employee or acquired by the Employee in the course of the Employee's employment at the Company (collectively, "Confidential Information"). Notwithstanding the foregoing, Confidential Information shall not include information or materials that was or becomes generally available to the public other than as a result of breach of this Agreement by the Employee. The Employee acknowledges that the Lafayette Entities take reasonable steps to protect their Confidential Information and to prevent disclosure of their Confidential Information to the public. Moreover, the Employee acknowledges that during Employee's employment with the Company, the Employee will be put in a position of trust and confidence with the Lafayette Entities' customers, investors, employees, and consultants. The Employee agrees and acknowledges, therefore, that it is fair and reasonable for the Lafayette Entities to take steps necessary to protect their Confidential Information; protect against the risk of misappropriation of such Confidential Information; and protect the Lafayette Entities' relationship with its customers, investors, employees, and consultants.

> . . . .

> 4.5. <u>Confidential Information</u>. This covenant is independent of, and in addition to, those set forth above.

> (a) In order to protect the Lafayette Entities' Confidential Information, the Employee hereby covenants and agrees that the Employee will at all times hold

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**                    **Page 8 of 13**
**Motion No.  004 006 009**

8 of 13

[* 8]

the Confidential Information in confidence, will take all reasonable and necessary measures to prevent the disclosure of the Confidential Information, and will not use or disclose any Confidential Information, except for the benefit of the Company and to authorized representatives of the Company or except as required by any governmental or judicial authority.

(b) The Employee acknowledges that all Confidential Information is and shall remain the sole, exclusive, and valuable property of the Lafayette Entities and that the Employee has and shall acquire no right, title, or interest therein. Any and all printed, typed, written, or other material that the Employee may have or obtain with respect to Confidential Information shall be and remain the exclusive property of the Lafayette Entities, and any and all material (including any copies) shall, upon request of the Company, be promptly delivered by the Employee to the Company or the appropriate Lafayette Entity.

(NYSCEF Doc. No. 15 §§ 4.1, 4.5[a]-[b]).

According to Lafayette, Mr. Nunez-Unda breached Sections 4.1 and 4.5 of his Employment Agreement by disclosing the terms of the acquisition offer to Patch and as a result it lost out on the intended acquisition contemplated by the APA (NYSCEF Doc. Nos. 72 ¶¶ 213-229, 176). This too is sufficient at this stage of the litigation.

For the avoidance of doubt, to the extent that Mr. Nunez-Unda argues that Lafayette does not have standing to raise a claim based on breach of confidentiality because Lafayette was not a party to the APA, the argument fails. Lafayette's claim is not predicated on a breach of the APA. Rather, Lafayette's claim is that Mr. Nunez-Unda communicated *Lafayette's* confidential information to a third party, in violation of Sections 4.1 and 4.5 of his Employment Agreement, which subsequently caused Lafayette's special purpose entity POL to otherwise lose the deal. Thus, the branch of the motion seeking dismissal of this breach of contract claim is denied.

650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL   Page 9 of 13
Motion No. 004 006 009

9 of 13

## IV. Dismissal is Not Warranted as to Lafayette's Breach of Fiduciary Duty Counterclaim Against Mr. Nunez-Unda

To plead a cause of action for breach of fiduciary duty, a plaintiff must allege (i) that a fiduciary duty existed, and (ii) that the defendant breached that duty (*McKenna v Singer*, 2017 WL 3500241, at * 15 [Del Ch Ct 2017]). Mr. Nunez-Undo owed a fiduciary duty to his employer Lafayette (and if he was in fact appointed as CEO of POL, to POL as well), and he is alleged to have breached this duty when he divulged confidential information about the terms and conditions of the APA and Business Plan to Lafayette's competitor, causing Patch to reconsider the intended acquisition, which ultimately did not occur (NYSCEF Doc. No. 71 ¶¶ 230-239). This sets forth a claim sounding in breach of fiduciary duty. Thus, dismissal is not appropriate.[3]

## V. Dismissal is Not Warranted as to Lafayette's Misappropriation Counterclaim Against Mr. Nunez-Unda

A trade secret is "any formula, pattern, device or compilation or information which is used in one's business, and which gives him [or her] an opportunity to obtain an advantage over competitors who do not know or use it" (*Ashland Mgt. Inc v Janien*, 82 NY2d 395, 407 [1993]). To state a cause of action for misappropriation of trade secrets, a plaintiff must allege that: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means" (*E.J. Brooks Co. v Cambridge Security Seals*, 31 NY3d 441, 452 [2018]). To determine whether a trade secret exists, courts must consider whether the information is known outside of the business, whether the information is known by employees and others involved in the business, the extent of

---

[3] For the avoidance of doubt, the Court did not dismiss these allegations of breach of fiduciary duty with prejudice.

measures taken by the business to guard the secrecy of the information and the value of the information (*id.*).

As discussed above, the defendants allege that Mr. Nunez-Unda retained and improperly disclosed the terms and conditions of the planned acquisition of Patch and certain other confidential proprietary information of Lafayette (NYSCEF Doc. No. 72 ¶¶ 240-246). This is sufficient at this stage of the litigation and dismissal is not appropriate.

## VI. The motion seeking a Gag Order is denied

Gag orders and other orders "restraining extrajudicial comments by the parties . . . are not generally permitted unless there is a reasonable likelihood of the existence of serious threat to the right to a fair trial" (*Lowinger v Lowinger*, 264 AD2d 763, 763 [2d Dept 1999]). Such restraints on free speech "bear a heavy presumption of constitutional invalidity which may only be overcome upon a showing of a clear and present danger of a serious threat to the administration of justice" (*Matter of Natl. Broadcasting Co., Inc. v Cooperman*, 116 AD2d 287, 290 [2d Dept 1986] [quotations omitted]).

The record before the Court demonstrates that Mr. Nunez-Unda has made certain inflammatory accusations about Mr. Adrien as a professional (*see, e.g.*, NYSCEF Doc. No. 163 [referring to Mr. Adrien as "Le Crook" and "Professor Pimp," and accusing him of committing the "textbook definition of human trafficking"]).[4] Although a Gag-Order is not appropriate, if, in fact,

---

[4] Although not briefed yet by the parties, according to the United States Department of Justice, human trafficking, "also known as trafficking in persons, is a crime that involves compelling or coercing a person to provide labor or services, or to engage in commercial sex acts" (*What is Human Trafficking?*, US DEPT OF JUST [June 26, 2023], https://www.justice.gov/humantrafficking/what-is-human-trafficking).

discovery reveals that Mr. Nunez-Unda is without a legitimate factual basis for making these statements, the law has an "app" for that and redress can be sought via an appropriate counterclaim sounding in defamation.

Accordingly, it is hereby

ORDERED that POL's motion (Mtn. Seq. No. 004) to dismiss is GRANTED to the extent that the aiding and abetting fraud cause of action (thirteenth cause of action) is dismissed with prejudice; and it is further

ORDERED that Mr. Nunez-Unda's motion (Mtn. Seq. No. 006) to dismiss is DENIED; and it is further

ORDERED that Lafayette's motion (Mtn. Seq. No. 009) seeking the issuance of a gag order is DENIED; however, Lafayette is granted discovery on an expedited basis for the limited issue of the statements made by Mr. Nunez-Unda; and it is further

ORDERED that the first deposition to be conducted shall be that of Mr. Nunez-Unda; and it is further

ORDERED that Lafayette shall respond to all outstanding discovery demands within 30 days of this Decision and Order; Mr. Nunez-Unda shall respond to discovery demands within 30 days thereafter; the parties will provide a deposition schedule with names and dates within 45 days of

**650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL**
**Motion No.  004 006 009**

**Page 12 of 13**

12 of 13

this Decision and Order; depositions shall be completed on or before January 31, 2025; fact discovery shall be completed on or before February 28, 2025; expert discovery shall be completed on or before May 15, 2025; Notice of Issue shall be filed on or before May 29, 2025; and dispositive motions shall be due 45 days thereafter.

20241104114725ABORROKEB099DC180F245C39B2A72112683EE37

__11/4/2024__
DATE

ANDREW BORROK, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

650971/2022   NUNEZ-UNDA, JESUS vs. ADRIEN, THIBAULT LOUIS PHILIPPE ET AL        Page 13 of 13
Motion No.  004 006 009

13 of 13